**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CLUBX LLC, | ) | Case No. 20-12470 (KHK) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NON-DEBTOR SPORT & HEALTH HOLDINGS, LLC'S
OBJECTION TO WORLDGATE CENTRE OWNER LLC'S
<u>MOTIONS FOR RULE 2004 EXAMINATIONS</u>**

Non-debtor Sport & Health Holdings, LLC ("S&H Holdings") files these objections to the motions filed by creditor Worldgate Centre Owner LLC ("Worldgate") seeking an order commanding S&H Holdings and EagleBank to produce certain documents pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "2004 Motions") [Dkts. 57 & 58].

### **INTRODUCTION**

Worldgate has already taken a broad 2004 examination of the Debtor in this matter, and is now seeking another 2004 examination of the Debtor as well as the Debtor's parent company, S&H Holdings, and a bank with which S&H Holdings has a relationship. In April 2021, S&H Holdings voluntarily provided a significant number of documents that were responsive to Worldgate's initial 2004 examination requests to the Debtor. Following those productions (and another small production in May 2021), S&H Holdings did not hear any complaint or concern

---

Bradford F. Englander (VSB # 36221)
Jae Won Ha (VSB # 94781)
**WHITEFORD, TAYLOR & PRESTON L.L.P.**
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Email:  benglander@wtplaw.com
            jha@wtplaw.com

*Counsel to Sport & Health Holdings, LLC*

from Worldgate about them. In its new round of 2004 examination requests, Worldgate nonetheless claims that it needs more documents from the Debtor because "Worldgate believes that ClubX failed to produce some of the documents asked for in its previous requests." Dkt. 56 at 3. That is the first S&H Holdings has heard any such concern from Worldgate.

Worldgate's broad requests concern transactions that happened many years ago that were well known to Worldgate at the time. Worldgate is acting as if it is the trustee in this matter—and indeed it is Worldgate, not the trustee, that is conducting a broad investigation in this matter, and now seeks to expand it to non-debtors. Furthermore, on a call with counsel to the trustee and Worldgate on April 13, 2021, counsel for the trustee advised that it is in a joint prosecution agreement with Worldgate. Counsel to S&H Holdings asked that the agreement be disclosed, as to our knowledge that arrangement was neither disclosed nor approved by the bankruptcy court, but the trustee and Worldgate have yet to provide a copy.

Worldgate's 2004 examination requests are procedurally improper, usurp the role of the trustee, and would impose undue and improper burdens on non-debtors. The Court should deny them.

## BACKGROUND

More than 20 years ago, ClubX and Worldgate entered into a lease guaranty agreement.[1] Over the course of the next nineteen years, ClubX continued to serve as a guarantor of a lease agreement between Worldgate and one of ClubX's subsidiaries. In 2014, S&H Holdings and ClubX (together with other subsidiaries of S&H Holdings) entered into a Joint Purchase

---

[1] Worldgate's motion claims, "The Debtor presented itself to Worldgate to be a solvent, credit-worthy entity when it entered into certain prepetition guarantees, but its schedules now portray few remaining assets." Dkt. 57 at 2. But Worldgate fails to mention the fact that this supposed "present[ation]" of ClubX and entry into the guarantee was in the year 2000.

2

Agreement whereby an acquiring entity purchased assets and liabilities in various fitness facilities operated by the subsidiary sellers in exchange for cash, a promissory note, and securities in the acquiring entity. Worldgate was aware of the transaction before it closed, and after the closing S&H Holdings responded to detailed questions from Worldgate regarding the transaction and its effect on ClubX as guarantor. The tenant, a ClubX subsidiary, continued to pay Worldgate rent pursuant to the underlying lease agreement for the next five years, negotiating and entering into a lease amendment with Worldgate during that time.

In November 2020, ClubX filed a petition for Chapter 7 bankruptcy. In January 2021, Worldgate filed a motion for Rule 2004 examination [Dkt. 19], which the trustee joined in February [Dkt. 29] and the Court granted in March [Dkt. 33]. S&H Holdings and the Debtor thereafter conferred with the trustee and Worldgate regarding the entry of a protective order and a possible extension of time to produce documents pursuant to the Court's order. The trustee and Worldgate consented only to a ten-day extension, and ultimately the Court entered a Stipulation and Agreed Protective Order [Dkt. 47].

Some of the documents called for by the Court's Rule 2004 Order were maintained by S&H Holdings, so as a courtesy and to facilitate the trustee's investigation of the Debtor's estate, S&H Holdings produced more than 3,500 pages of documents between April 19 and April 29, 2021.[2] The productions contain, among other things, materials related to the 2014 transaction, the lease and guaranty agreements related to the Worldgate property, financial data and projections, and certain tax documents. Neither the trustee nor Worldgate contacted S&H Holdings to identify any production deficiencies or to request additional materials. Then, four months after receiving the initial production of documents, Worldgate (but not the trustee) filed

---

[2] S&H Holdings produced an additional document on May 21, 2021.

three motions for Rule 2004 examinations seeking additional documents from the Debtor, as well as from non-parties S&H Holdings and EagleBank.

## LEGAL STANDARD

"Parties do not have an absolute right to Rule 2004 examinations—the granting of a Rule 2004 examination is dependent on the discretion of the Court." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016); *see also* Fed. R. Bankr. P. 2004(a) ("On motion of any party in interest, the court *may* order the examination of any entity.") (emphasis added); *In re J & R Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010) ("Whether or not the court allows the examination is a matter committed to its discretion, and requires a sufficient cause.") (citations omitted)). In exercising this discretion, "it must *first* be determined that the examination is proper.'" *In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002) (quoting *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983)) (emphasis in original).

"When a party other than a trustee seeks through a Rule 2004 examination to duplicate the role of the trustee as set forth in section 704 of the Bankruptcy Code and other applicable law, that request smacks of harassment and, absent a showing to the contrary or special circumstances, must be denied." *In re LLC 1 07ch12487*, 608 B.R. 830, 836 n.11 (Bankr. N.D. Ill. 2019).

## OBJECTIONS

### I. Worldgate's 2004 Motions Improperly Seek an Order Compelling the Production of Documents.

The Court should deny the 2004 Motions because they improperly seek an order compelling the production of documents, rather than an order authorizing a 2004 examination.

> [W]hen the [2004] motion is correctly used and implemented, orders granting them do not require anything of the other party. The rule contemplates only that the court may order the examination of any entity. That entity's cooperation in the examination process is then

4

> secured with a subpoena, issued under Rule 45 of the Federal Rules of Civil Procedure.

*In re Sheetz*, 452 B.R. 746, 748 (Bankr. N.D. Ind. 2011) (citation omitted); *see also* Fed. R. Bankr. P. 2004(c) ("The attendance of an entity . . . for the production of documents or electronically stored information . . . may be compelled [via subpoena] as provided in Rule 9016.").

Here, by seeking an order compelling the production of documents, Worldgate skipped the requisite procedural requirements and needlessly burdened the Court with a dispute that may have been resolved or narrowed through the ordinary meet-and-confer process. *See In re Onatah Farms, LLC*, No. 21-10091, 2021 WL 2809902, at *2 (Bankr. N.D. Ind. Apr. 29, 2021) ("By asking the court not only to permit the examination but also approve a subpoena ordering it to occur at a particular time and place and requiring the production of documents the motion seems to subvert the usual subpoena process and the protections Rule 45 gives to the subpoenaed party."); *Sheetz*, 452 B.R. at 749 ("This process [of authorizing a 2004 examination without ordering the production of documents] has the advantage of allowing the court to avoid the appearance of approving any details of the examination, such as when, where, etc. Only if there is a dispute on such issues does the court need to become involved."). Worldgate also unduly burdened non-debtor S&H Holdings with having to respond in only six days (in late August) to what is in essence a motion to compel production of documents that are being requested for the first time in the motion itself.

The Court should deny Worldgate's 2004 Motions or modify the order to simply authorize a 2004 examination of S&H Holdings, limited to appropriate topics (as described

further below).³ Worldgate can then serve a subpoena to which S&H Holdings can respond. Fed. R. Bankr. P. 2004(c). Worldgate and S&H Holdings can then confer regarding the scope of the subpoena to narrow or eliminate any disagreements that require this Court's attention, and any remaining disputes will benefit from a more complete record of the bases for the parties' positions.

## II. The Requests to S&H Holdings Are Impermissible.

### A. Request No. 1 is Overbroad, Unduly Burdensome, and Duplicative of Other Requests.

Although Worldgate claims to seek discovery from non-debtor S&H Holdings "relating to the financial affairs of the Debtor," Dkt. 57 at 2, Request No. 1 purports to command S&H Holdings to produce its monthly financial statements, as well as those of *all* its subsidiaries, predecessors, successors, members, parents, owners, equity holders, investors, partners, lenders, transferees, transferors, guarantors, indemnitees, indemnitors, franchisees, franchisors, and insiders. As drafted, Request No. 1 would compel the production of sensitive financial information for numerous individuals and entities, regardless of whether such financial statements or activities relate to the Debtor. Far from "explor[ing] the assets, liabilities, and operations of the Debtor," Dkt. 57 at 2, Worldgate asks this Court to sanction through Rule 2004 a pre-litigation investigation of S&H Holdings' detailed finances in order to assess claims it might bring in proceedings outside the bankruptcy court. *See Millennium Lab Holdings II*, 562 B.R. at 629 ("Rule 2004 was not intended to provide private litigants . . . with 'a strategic advantage in fishing for potential private litigation.'" (quoting *In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass. 1981)); *In re Underwood*, 457 B.R. 635, 645 (Bankr. S.D.

---

³ For the additional reasons explained in Part III, the request for a Rule 2004 examination of EagleBank should be denied in its entirety.

Ohio 2011) ("[T]he explicit language of Rule 2004 *requires* that an examination concern the *debtor* or the debtor's estate." (emphasis added)); *J & R Trucking*, 431 B.R. at 822 ("To the extent the movants seek to discover avoidable transfers, they are intruding upon the trustee's duties . . . . As for movants' desire to identify third parties who may also be liable to them, that, quite simply, is neither this court's concern nor the purpose of Rule 2004."). Worldgate makes no argument as to why detailed, monthly financial data about S&H Holdings and other unrelated individuals and entities are necessary or relevant to the Debtor's estate. *See In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) ("The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks . . . ."); *Underwood*, 457 B.R. at 645 (denying U.S. Trustee's requests that "cross[ed] the line into the type of full scale investigation of a non-debtor's private affairs . . . without any serious attempt to connect them to this specific bankruptcy case"). They are not.

To be sure, Request No. 1 does seek monthly financial statements for S&H Holdings' subsidiary, the Debtor. But S&H Holdings already voluntarily produced much of the very material Worldgate now seeks in response to the Court's earlier Order Authorizing 2004 Examination [Dkt. 24], and Worldgate has not identified specific deficiencies with the prior productions. Additionally, Worldgate separately moved to compel the same information from the Debtor directly, and thus its Request to S&H Holdings is duplicative and unduly burdensome. *See In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("[T]he examination should not be so broad as to be more disruptive and costly . . . than beneficial to the creditor. In light of the fact that [the debtor] is furnishing financial information . . . it follows that [the creditor's] requested examination should not encompass matters that will be unduly burdensome . . . and duplicative of previously furnished information or will not be required in

7

order to evaluate or propose a plan of reorganization."). The Court should deny Request No. 1, or in the alternative limit the Request to "All monthly financial statements, including all balance sheets, income statements, and cash flow statements from August 2014 through December 2019 for ClubX."

### B. Request Nos. 2 through 8 Are Improper Interrogatories.

S&H Holdings also objects to Request Nos. 2 through 8 as improper attempts to compel a non-party to answer interrogatories. Those requests read:

> REQUEST NO. 2: All documents sufficient to explain the decline in value of the "Investment in USF" after 2014 as shown on the "Consolidated – Sport & Health Holdings, LLC Balance Sheet" for years ending in 12/31/2014 through 12/31/2019.
>
> REQUEST NO 3: All documents sufficient to support the purpose of and methodology used in allocating the Note Receivable between Sport and Health, Inc. and Sport & Health Holdings, including but not limited to, how the value was apportioned between the two entities.
>
> REQUEST NO. 4: All documents sufficient to explain why the Note Receivable's value was recorded as $18,456,097 on the "Consolidated – Sport & Health Holdings, LLC Balance Sheet for Year Ending 12/31/2014" despite having a face value of $21,000,000.
>
> REQUEST NO. 5: All documents sufficient to identify the uses of the payment of the $26,208,028.15 received from Delos Capital and related to the Note Receivable.
>
> REQUEST NO. 6: All documents sufficient to identify the purpose and ultimate beneficiary of the payment of the $19,264,749.88 made by USF Topco to EagleBank related to the Note Receivable.
>
> REQUEST NO. 7: All documents sufficient to identify the uses of the advances provided by EagleBank related to the Promissory Note.
>
> REQUEST NO. 8: All documents sufficient to identify and explain the nature of the "Note Receivable – VM Club" account appearing on the "Consolidated – Sport & Health Holdings, LLC Balance Sheet for Year Ending 12/31/2018."

These are not proper document requests, as they cannot be met with the production of existing business records; rather they explicitly ask for explanations of various portions of documents that S&H Holdings already produced. S&H Holdings cannot be obligated to create documents in response to document requests. *Cf. Hallmark v. Cohen & Slamowitz, Midland Funding LLC*, 302 F.R.D. 295, 299 (W.D.N.Y. 2014) ("It is basic that in responding to a document production request, pursuant to [Federal Rule of Civil Procedure 34(a)] a party is not required to create documents meeting the document requests, only to produce documents already in existence." (internal quotation marks omitted)). Moreover, Rule 2004 does not provide for the issuance of interrogatories. *See* Fed. R. Bankr. P. 2004(c). These requests should be denied.

**III.     The Request For a Rule 2004 Examination of EagleBank Should Be Denied For the Same Reasons.**

Worldgate's request for a 2004 examination of EagleBank claims to be aimed at "the financial affairs of ClubX," Dkt. 58 at 1, but in fact is aimed at S&H Holdings' financial affairs. Indeed, the only two requests in the proposed 2004 examination of EagleBank are about S&H Holdings, not ClubX.

In particular, Worldgate seeks the following information from EagleBank:

> REQUEST NO. 1: All documents sufficient to support the frequency and amounts of advances EagleBank made to Sport & Health Holdings, LLC relating to the Promissory Note.
>
> REQUEST NO. 2: All financial reporting provided by Sport & Health Holdings relating to the Promissory Note.

ClubX is nowhere mentioned in these requests. The Court should sustain S&H Holdings' objections to these requests for the same reasons the Court should reject the 2004 examination request to S&H Holdings itself: Worldgate is once again short-circuiting the appropriate process (for permission to undertake the examination followed by a subpoena), usurping the role of the

trustee, and has failed to make any showing as to why this examination of a non-debtor about another non-debtor should be permitted.

## CONCLUSION

Worldgate's 2004 examination requests to S&H Holdings and EagleBank should be denied.

Dated:  August 26, 2021						Respectfully submitted,

*/s/ Bradford F. Englander*
Bradford F. Englander, VSB # 36221
Jae Won Ha, VSB # 94781
WHITEFORD TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile:  (703) 280-3370
Email:  benglander@wtplaw.com
         jha@wtplaw.com

C. Bryan Wilson (*pro hac vice*)
Matthew Mooney (*pro hac vice*)
WLLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile:  (202) 434-5029
Email:  bwilson@wc.com
         mmooney@wc.com

*Counsel to Sport & Health Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2021, a copy of the foregoing Non-Debtor Sport & Health Holdings, LLC's Objection to Worldgate Centre Owner LLC's Motions for Rule 2004 Examinations was filed and served via the Court's Electronic Case Filing System on all parties receiving such notification.

                                          */s/ Bradford F. Englander*
                                        Counsel