## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| ClubX, LLC, | ) | Case No. 20-12470-KHK |
| | ) | |
| Debtor. | ) | Chapter 7 Proceeding |
| | ) | |

## MOTION TO APPROVE SETTLEMENT AND COMPROMISE

Comes now Jennifer J. West, Chapter 7 Trustee (the "Trustee") for the Bankruptcy Estate of ClubX, LLC (the "Estate"), by counsel, and hereby moves this Court (the "Motion") pursuant to 11 U.S.C. §§ 105 and 363, and Federal Rule of Bankruptcy Procedure 9019 for entry of an Order substantially in the form attached hereto as **Exhibit A** (the "Approval Order") approving the Settlement Agreement between the Trustee and the following parties: Sport & Health Holdings, LLC ("Holdings"), VM Club Properties, LLC ("VM Club"), RT Sport & Health Holding, LLC ("RT"), Green Stamps LLC ("Green Stamps"), KonzKettle, LLC ("KonzKettle"), Be The Change, L.L.C. ("BTC"), Leslie Ariail, Trustee, EMS Residuary Trust ("EMS Residuary Trust"), Leslie Ariail, Trustee, EMS Family Trust ("EMS Family Trust"), Real Property Advisors, L.L.C. ("RPA"), The Minkoff Family Investment Club LLC ("Minkoff Family"), Thomas D.W. Fauquier

Robert H. Chappell, III, Esq. (VSB #31698)
Jennifer J. West, Esq. (VSB #47522)
Christopher A. Hurley, Esq. (VSB #93575)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Phone:  (804) 697-2000
Fax:  (804) 697-2100
Email:    rchappell@spottsfain.com
          jwest@spottsfain.com
          churley@spottsfain.com
*Counsel for Jennifer J. West,*
*Chapter 7 Trustee*

("Mr. Fauquier"), Russell C. Minkoff ("Russell Minkoff"), and Barry Minkoff (collectively, the "Holdings Parties"). In support of her Motion, the Trustee respectfully states as follows:

### Jurisdiction and Parties

1.     These matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2), and jurisdiction is proper before the Court pursuant to 28 U.S.C. § 1334(a).

2.     Venue is proper before the Court pursuant to 11 U.S.C. §§ 1408 and 1409.

3.     ClubX, LLC (the "Debtor") is a Virginia limited liability company. On November 5, 2020 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 7 of the Bankruptcy Code.

4.     On or about November 5, 2020, H. Jason Gold, Esquire was appointed Chapter 7 Trustee of the Bankruptcy Estate of ClubX, LLC. Mr. Gold resigned as Chapter 7 Trustee on April 22, 2022.

5.     Jennifer J. West, Esquire, was appointed as Successor Chapter 7 Trustee of the Estate on April 30, 2022, and continues to serve as Trustee of the Debtor's estate.

6.     Holdings is a limited liability company organized under the laws of the State of Delaware and authorized to transact business in Virginia. Holdings is the 100% member of the Debtor. On April 23, 2021, Holdings filed a proof of claim in the Debtor's bankruptcy case, Claim No. 2-1, in the amount of $11,986,790.87.

7.     Only one creditor other than Holdings filed a proof of claim in this case. On April 22, 2021, Worldgate Centre Owner, LLC ("Worldgate") filed a proof of claim in the Debtor's bankruptcy case, Claim No. 1-1, in the amount of $27,968,342.65, arising from the Debtor's guaranty of a lease of real property from Worldgate to the Debtor's subsidiary, Sport and Health Virginia Properties, L.C. ("S&H Virginia").

8.      There is a significant and material history of disputes and litigation between Worldgate and the Debtor/Holdings Parties.

9.      Any one or more of the Trustee and Holdings Parties are referred to collectively herein as the "<u>Parties</u>."

<b><u>Background</u></b>

**A.  Pre-Petition Operation of the Debtor**

10.      Prior to August 2014, the Debtor owned and operated a chain of fitness clubs under the name of "Sport & Health" (the "<u>Clubs</u>") through its subsidiaries S&H Virginia, Washington Sport & Health, Inc. ("<u>Washington S&H</u>"), Sport and Health Maryland Properties, L.C. ("<u>S&H Maryland</u>"), Sport and Health, Inc. ("<u>S&H Inc.</u>"), Sport & Health Spa Services, L.C. ("<u>S&H Spa</u>"), Sport and Health Club Management, L.C. ("<u>S&H Management</u>"), and S&H Repository, Inc. f/k/a FM/Sport & Health Investments, Inc. ("<u>S&H Repository,</u>") (collectively, the "<u>S&H Entities</u>"). S&H Virginia, S&H Maryland, and Washington S&H owned the Clubs located in Virginia, Maryland, and Washington, D.C., respectively, while other of the S&H Entities managed and operated the Clubs.  Holdings, the S&H Entities, and the Debtor are referred to collectively herein as the "<u>Holdings Group</u>."

11.      One of the Clubs (the "<u>Worldgate Club</u>") was operated out of commercial real property that was leased from Worldgate to S&H Virginia.  The Debtor executed a guaranty of the lease between Worldgate and S&H Virginia (the "<u>Lease</u>").

12.      In or around August 2014, the Debtor and the S&H Entities engaged in a transaction through which they, *inter alia*, sold certain intellectual property and effectively all but three of the Clubs and their related assets (the "<u>2014 Transaction</u>").  The Worldgate Club was one of the three Clubs excluded from the 2014 Transaction.

3

13.    The Trustee has asserted, *inter alia*, that although the 2014 Transaction involved the sale of a majority of the assets of the Debtor or its subsidiaries, the consideration paid for those assets did not flow through the Debtor and was instead directed to Holdings. For example, Holdings received a Promissory Note in the approximate amount of $21 million (the "Promissory Note") and securities (the "Securities") from the purchaser.

14.    In March 2018, the Holdings Group was involved in another transaction related to the Clubs, through which the Holdings Group received additional consideration (the "2018 Transaction").

15.    The Trustee has asserted, *inter alia*, that the result of the 2018 Transaction was to further consolidate the Holdings Group's assets at the level of Holdings, its members, and/or its affiliates, where they were out of the reach of creditors of the Debtor and/or its subsidiaries. For instance, the Trustee asserts that Holdings directly received payments on obligations that were owed, in part, to the Debtor and/or its subsidiaries, such as the Promissory Note and Securities.

16.    In 2020, Worldgate filed an action for possession in the Circuit Court of Fairfax County against S&H Virginia, presumably due to S&H Virginia's failure to pay rent.  On November 10, 2020, the Circuit Court entered a judgment for possession.  Worldgate thereafter terminated the lease and took possession of the premises on February 14, 2021.

17.    The Debtor filed its chapter 7 petition on November 5, 2020, and S&H Virginia filed its chapter 7 petition on April 22, 2021.

**B.  Post-Petition Background and Disputes**

   **a.  *2004 Examinations***

18.    After the Debtor filed bankruptcy, but prior to the appointment of Ms. West as Trustee, between January 12, 2021, and August 19, 2021, the Court granted several motions filed

by Worldgate to conduct Rule 2004 examinations of the Debtor, Holdings, and EagleBank (the "Worldgate 2004 Exams") (ECF Nos. 22, 56, 57, 58), which the Court granted over objections of the Debtor and/or Holdings (ECF Nos. 33, 72, 73, 74). Pursuant to the Worldgate 2004 Exam, Worldgate obtained documents from the Debtor, Holdings, and EagleBank.

19.    After her appointment as Trustee, Worldgate provided the Trustee with the documents from the Worldgate 2004 Exam ("Wordgate's 2004 Documents"). The Trustee reviewed Worldgate's 2004 Documents.

20.    On August 16, 2022, the Trustee filed her *Notice of and Motion of Jennifer J. West, Chapter 7 Trustee of ClubX, LLC, for Authority to Conduct Examinations Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure*, which the Court granted by Consent Order entered August 29, 2022 (the "Trustee's 2004 Exam," and collectively with the Worldgate 2004 Exam, the "2004 Exams").

21.    In addition to receiving and considering the documents provided pursuant to the 2004 Exams, the Trustee informally interviewed a business representative of Holdings, informally reviewed certain documents from Holdings, and consulted on numerous occasions with Holdings' counsel regarding the background of the businesses of the Debtor and its affiliates. The Trustee further formally conducted a 2004 examination of Holdings' business representative.

22.    The documents and information produced by all examinees in the 2004 Exams and the informal interview and document review are referred to collectively herein as the "Produced Information."[1]  Some or all of the Produced Information is subject to the Stipulation and Agreed

---

[1] In the event that the Court does not grant this Motion, the Trustee reserves all rights to conduct such further discovery as may be appropriate.

Protective Order entered by the Court on May 6, 2021 (the "2021 Protective Order"). (ECF No. 45.)[2]

### b. *Potential Claims Against Holdings Parties*

23.    Upon reviewing the Produced Information, the Trustee identified potential claims and causes of action against the Holdings Parties, including (i) fraudulent and voluntary conveyances and obligations related to the 2014 Transaction and 2018 Transaction; (ii) conversion; (iii) equitable claims related to the 2014 Transaction and 2018 Transaction; (iv) breach of fiduciary duties and/or breach of trust; and (v) disallowance or recharacterization of Holdings' proof of claim (together with any and all other claims the Trustee raised or could raise or assert on behalf of the Estate against the Holdings Parties, the "Trustee Claims").[3]

24.    The Trustee negotiated with the Holdings Parties regarding the Trustee Claims, and the Trustee Claims are subject to a tolling agreement between the Trustee and the Holdings Parties (as amended or modified, the "Tolling Agreement").

### c. *Claim Objection Against Worldgate*

25.    After her appointment as Trustee, the Trustee approached Worldgate to discuss certain issues regarding the Worldgate Proof of Claim and attempted unsuccessfully to resolve those issues with Worldgate.

26.    On November 4, 2022, the Trustee filed her Claim Objection to the Worldgate

---

[2] Neither the Trustee nor the Holdings Parties has waived the confidentiality obligations set forth in the 2021 Protective Order.  All rights and obligations under the 2021 Protective Order are reserved.

[3] Without limiting the generality of the foregoing, the term, "Trustee Claims," as used in this Motion and in the Approval Order include claims for fraudulent or voluntary conveyances, turnover, conversion, violation of the trust fund doctrine, unjust enrichment, imposition of a constructive trust, disallowance of a proof of claim, recharacterization of debt as equity, equitable subordination, breach of fiduciary duty, and breach of trust.

Proof of Claim (the "Claim Objection").  (ECF No. 132.)  Worldgate filed its Answer to the Claim

Objection on December 21, 2022.  (ECF No. 137.)

27.     The Trustee issued discovery in connection with the Claim Objection and received

some documents responsive to that discovery. Upon reviewing the documents produced by

Worldgate, the Trustee unsuccessfully negotiated with Worldgate regarding the Claim Objection.[4]

Certain documents and information obtained by the Trustee from Worldgate are subject to the

2021 Protective Order.

28.     The Worldgate Proof of Claim represents the largest claim filed in the Debtor's

bankruptcy case.

### d.  *Mediation*

29.     Rather than engage in costly and protracted litigation, the Trustee, Holdings Parties,

and Worldgate agreed to participate in a mediation of the Trustee Claims and Claim Objection.

30.     The Trustee believed that a mediation of the Trustee Claims and Claim Objection

would be the most likely avenue toward a consensual resolution of all issues in this case, as (i) the

Trustee Claims constitute the primary and potentially largest asset in this case, and (ii) Worldgate's

proof of claim is the largest claim filed in this case and the only claim filed by a non-insider

creditor.

31.     On September 29, 2023, the Trustee filed a Motion Requesting Judicial Mediation

(the "Mediation Motion"), in which the Trustee sought the appointment of a judicial mediator to

facilitate a multi-party mediation and negotiations with respect to the Trustee Claims and the Claim

Objection.  (ECF No. 143.)

---

[4] The Trustee reserves all rights to seek production of any documents responsive to the discovery
issued to Worldgate that have not been produced, including without limitation by filing a motion
to compel production.

32.    On November 3, 2023, the Court entered its Order Granting Motion Requesting Judicial Mediation (ECF No. 152) (the "Mediation Order"), which was modified by the Joint Stipulation Modifying Mediation Order (ECF No. 155) (the "Stipulation").   Pursuant to the Mediation Order, the Court appointed the Honorable Kevin R. Huennekens as the mediator (the "Mediator") with respect to the Trustee Claims and Claim Objection.

33.    Prior to entry of the Mediation Order and Stipulation, the Trustee was in possession of, *inter alia*, the Produced Information from Holdings and documents produced from Worldgate in connection with the Trustee's discovery related to Claim Objection.  Before the mediation, and pursuant to the Mediation Order and Stipulation, the Trustee facilitated the exchange of all such documents and information between Worldgate and the Holdings Parties as well as the production and exchange of new documents and information.

34.    On April 9, 2024, the Mediator conducted a mediation among the Trustee, certain of the Holdings Parties' representatives, and Worldgate representatives (the "Mediation").  During the Mediation, the Trustee and the Holdings Parties negotiated in good faith, succeeded in resolving their disputes regarding the Trustee Claims, and entered into a Binding Term Sheet Settling All Claims Subject to Federal Rule of Evidence 408 (the "Term Sheet").  During the Mediation, the Trustee was unable to resolve the Claim Objection with Worldgate.  (*See Report of Judicial Settlement Officer*, filed April 12, 2024, ECF No. 157.)

35.    Since the Mediation, the Parties have entered into a more detailed Settlement Agreement, which is attached hereto as **Exhibit B**, and is intended to formalize the agreement between the Parties and to supersede the Term Sheet (the "Settlement Agreement").  (For the avoidance of doubt, Worldgate is not a party to the Term Sheet or Settlement Agreement, and the term "Parties" as used herein shall refer only to one or more of the Trustee and Holdings Parties.)

8

36.     The Term Sheet and Settlement Agreement are the results of extensive good-faith and arm's-length negotiations between the Trustee and Holdings Parties, including the negotiations facilitated by the Mediator, and resolve all matters between the Trustee and the Holdings Parties on the terms set forth herein.

**Proposed Settlement**

37.     In addition to the usual and customary terms, the material terms[5] of the Settlement Agreement include the following:

   a. **Payment**.  On the Effective Date (as defined below), and subject to the satisfaction of the conditions to the occurrence of the Effective Date (discussed below), Holdings shall pay to the Trustee the sum of One Million Two Hundred Fifty Thousand and No/100 Dollars ($1,250,000.00) (the "Settlement Payment").

   b. **Approval and Bar Order Provision**.  The Trustee, in consultation with Holdings, has prepared this Motion and the Approval Order, including, among other customary provisions: (a) a bar order provision substantially in the form set forth below (the "Bar Order Provision"); (b) a finding and determination that the Parties acted in good faith in negotiating and entering into the Term Sheet and the Settlement Agreement; and (c) a finding that the Holdings Parties are entitled to the benefits and protections set forth in Section 363(m) of the Bankruptcy Code, such that the reversal or modification on appeal does not affect the validity of the Settlement Agreement absent a stay pending such appeal.  The inclusion of the Bar Order Provision, the findings regarding good faith, and the applicability of Section 363(m) are material terms of the Settlement Agreement.  The Holdings Parties and the Trustee have approved the form and substance of the Approval Order, which may only be waived with the consent of Holdings and the Trustee.

   c. **Bar Order Provision**.  **Upon the Effective Date, the Trustee, Debtor, the Debtor's subsidiaries, the Debtor's creditors and all other parties receiving notice of this Motion and the Settlement Agreement shall be barred and enjoined from filing, asserting, and/or prosecuting any claim, counterclaim, demand, or litigation over any of the claims or causes of action released in the Settlement Agreement, the Trustee Claims, or other claims or causes of action that the Trustee has asserted or could have asserted against the**

---

[5] In the event of any inconsistency between the description of the Settlement Agreement contained in this Motion and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern and control.

**Holdings Parties and/or other Released Parties, or that such person could have asserted derivatively on behalf of the Debtor or its Estate.**

d.   **Settlement Effective Date**.   The occurrence of the Effective Date and the transactions that are to occur on the Effective Date, as set forth in the Settlement Agreement, shall be on the first business day following the satisfaction or due waiver in writing of all of the following: (a) the entry of the Approval Order in a form and substance that is acceptable to Holdings and the Trustee; (b) the Approval Order shall have become a Final Order (unless the Trustee and Holdings agree in writing to waive finality); and (c) either (i) the Trustee shall have delivered to Holdings a completed, current W-9 and wiring instructions for the Trustee's counsel written on the Trustee's letterhead, which shall include the verified phone number of the authorized recipient so that Holdings can call the authorized recipient to verify the wiring instructions verbally, or (ii) the Parties shall have agreed that the Settlement Payment shall be made by certified check payable to the Trustee.

e.   **Mutual General Release**.   On the Effective Date, and subject to the conditions thereto, and to the concurrent delivery of the Settlement Payment to the Trustee, the Trustee (on behalf of herself, the Debtor, the Estate, and each of their respective successors and assigns), on the one hand, and the Holdings Parties (on behalf of themselves, their heirs, legatees, devisees, successors and assigns), on the other, shall release, waive and forever discharge and exonerate each other, and each of their parents, subsidiaries, affiliates, owners, agents, attorneys, law firms, employees, members, officers, directors, representatives, predecessors, successors, assigns, heirs, legatees (collectively, "Released Parties" and individually a "Released Party") of and from any and all claims, demands, causes of action, accounts, obligations and liabilities, arising or existing from the day before the beginning of time through and including the Effective Date, whether known or unknown, matured or unmatured, liquidated or unliquidated, fixed or contingent, legal or equitable, direct or derivative ("Released Claims").   Without limiting the generality of the foregoing, "Released Claims" include any and all claims, causes of action, rights and powers that the Trustee has pursuant to Section 544 of the Bankruptcy Code and the Trustee Claims.   Notwithstanding the foregoing: (a) nothing herein shall release or affect the rights or obligations of the Parties under this Agreement, and (b) nothing herein shall release or affect the rights, claims, causes of action, counterclaims or defenses of any Party against Worldgate or any of Worldgate's parents, subsidiaries, affiliates, owners, agents, attorneys, law firms, employees, members, officers, directors, representatives, successors, assigns, heirs, legatees, all such rights being expressly reserved.   The Trustee and the Holdings Parties hereby represent, warrant, and covenant that they have not assigned, and will not assign, any Released Claims to any other person.

f.   **Covenant Not to Sue**.   On the Effective Date, and subject to the conditions thereto, and to the concurrent delivery of the Settlement Payment to the Trustee, the Trustee (on behalf of herself, the Debtor, the Estate, and each of their successors and

assigns), on the one hand, and the Holdings Parties (on behalf of themselves, their heirs, legatees, devisees, successors and assigns), on the other, covenant not to sue one another, cause or support any third party to sue one another, cause the other to be sued, or file any motion, petition, or action concerning any of the Released Claims or the subject matter thereof, other than to obtain the approval of and enforce the terms of this Agreement.

g. **Holdings Proof of Claim**.  Within five (5) business days following the Effective Date, and subject to the satisfaction of the conditions thereto, Holdings shall withdraw its proof of claim in the ClubX, LLC bankruptcy case with prejudice.

h. **Tolling**.  The Trustee and the Holdings Parties shall continue and extend the existing Tolling Agreements through and including 30 days after any order on the 9019 Motion becomes a Final Order (as defined in the Settlement Agreement), at which time the tolling agreements shall expire and be of no further effect.

i. **Confidentiality**.  The confidentiality obligations set forth in the 2021 Protective Order (ECF No. 45), the Stipulation and Agreed Protective Order (ECF No. 104) and the Mediation Order (ECF No. 152) shall remain in full force and effect.

38.     By this Motion, the Trustee respectfully requests entry of an order, substantially in the form of the Approval Order, authorizing and approving the Settlement Agreement, a copy of which is attached as Exhibit 1 to the Approval Order.

## Basis for Relief

### A. The Court Should Approve the Settlement Agreement.

39.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of this title."   Federal Rule of Bankruptcy Procedure 9019 further provides, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."   The Supreme Court of the United States has noted that "[c]ompromises are a 'normal part of the [bankruptcy] process . . . .'" *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

40.     "A decision to approve a compromise or settlement under Bankruptcy Rule 9019 is subject to the Court's 'sound discretion.'"  *In re Meridien Energy, LLC*, No. 23-31377-KLP, 2023 Bankr. LEXIS 2498, at *17 (Bankr. E.D. Va. Oct. 6, 2023).   In determining whether to approve a compromise and settlement, bankruptcy courts should consider "the probability of the trustee's success in any ensuing litigation, any collection difficulties, the complexity, time and expense of the litigation, and the interests of the creditors with proper deference to their reasonable views."  *In re LeClairRyan PLLC*, No. 19-34574-KRH, 2022 Bankr. LEXIS 1817, at *23 (Bankr. E.D. Va. June 28, 2022) (quoting *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995)).   The "compromise or settlement will likely gain approval if it is both 'fair and equitable,' as well as representative of the best interests of the estate as a whole."  *In re Three Rivers Woods*, No. 99-3020-T, 2001 Bankr. LEXIS 737, at *18 (Bankr. E.D. Va. Mar. 20, 2001).

41.     In determining whether to approve the proposed settlement, the Court should not substitute its judgment for that of the Debtor.  *See In re Carla Leather, Inc.*, 44 B.R. 457, 465–66 (Bankr. S.D.N.Y. 1984).   Nor should the Court conduct a "mini-trial" of the underlying case.  *In re Austin*, 186 B.R. at 400.   Instead, "[t]he Court's fundamental determination is '. . . whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Three Rivers Wood, Inc.*, 2001 Bankr. LEXIS 737, at *18 (quoting *In re Austin*, 186 B.R. at 400) (omission in original). Where a proposed agreement is fair and reasonable and represents the best interests of the estate as a whole, it should gain approval.  *Id*.

42.     The Settlement Agreement was entered into in good faith, is the result of an arm's-length negotiation facilitated by the Mediator between the Trustee and Holdings, and meets the fair and equitable test.

43.     The Settlement Agreement reasonably accounts for the probability of the Trustee's

success in any litigation of the Trustee Claims, and the hurdles that the Trustee faces in connection

with prosecution of the Trustee Claims.  Certain of the Trustee Claims arise under state law and

are subject to statutes of limitation that begin to run from the date the cause of action is discovered.

Because the Trustee Claims are based on conduct that occurred as many as six years before the

Petition Date, the Holdings Parties have indicated they would raise defenses based on the statutes

of limitation for those claims.  While the Trustee believes that she could overcome statute-of-

limitations defenses, these issues nonetheless present significant risks in any litigation over the

Trustee Claims.

44.     Further, many of the Trustee Claims would require intensive fact evidence, which,

because of the passage of significant time since the alleged conduct, may be difficult to obtain

through discovery.   For example, Holdings has asserted the following regarding the 2014

Transaction and 2018 Transaction:[6]

   a.  As part of the 2014 Transaction, the purchaser gave Holdings the Promissory Note,
       Securities,  and  $9,782,654  in  cash.    All  of  the  Debtor's  then  existing
       indebtedness—$39,199,552—was paid off.

   b.  Holdings invested significant resources to help the three retained Clubs succeed.

   c.  As a result of the 2018 Transaction, S&H Virginia was current on its payments
       under the Worldgate Lease, and all other indebtedness of the Debtor had been paid
       in full.

   d.  Following  the  2018  Transaction,  during  2018  and  2019,  Holdings  injected
       additional funds into the Worldgate Club.

---

[6] The Trustee does not admit any of the facts or characterization asserted by Holdings and to the
extent the Settlement Agreement is not approved for any reason, the Trustee expressly reserves all
rights.

45.     Many of the Trustee Claims would also require or benefit from a determination that the Debtor was insolvent at certain times, which would be expensive and difficult for the Trustee to prove. As discussed above, Holdings has asserted that: (a) the Debtor was current on the payment of its debts as a result of the 2014 Transaction, and had eliminated all debt (other than future rent claims) as of the 2018 Transaction; and (b) for eighteen months following the 2018 Transaction, S&H Virginia continued paying full rent under the Worldgate Lease (and continued paying all other obligations as well). Further, the Trustee is aware of certain case law suggesting that future amounts due under a lease agreement (such as the Worldgate Lease) should not be considered for the purposes of calculating solvency.[7]

46.     In addition to the substantial hurdles that the Trustee would face with respect to establishing insolvency, the Trustee would face difficulties with respect to establishing that the Debtor was inadequately capitalized—another component to many of the Trustee Claims.  For example, Holdings has asserted that between the closing of the 2014 and 2018 Transactions, Holdings injected material amounts in cash into the Debtor; arranged for and guaranteed a loan from EagleBank for additional capital; and extensively renovated the Worldgate premises. Holdings has further asserted that following the 2018 Transaction, Holdings injected additional funds into the Debtor. Holdings would argue that these substantial discretionary cash infusions,

---

[7] *See, e.g.*, *In re Heilig-Meyers Co.*, 319 B.R. 447, 467 (Bankr. E.D. Va. 2004), *aff'd*, 328 B.R. 471 (E.D. Va. 2005) (balance sheet tests for insolvency looks for liabilities as of date of transfer, not for liabilities debtor will incur for future months' use of leased facilities; court assigned future rent zero value); *Eerie World Ent., L.L.C. v. Bergrin*, No. 02-CV-6513, 2004 WL 2712197, at *2 n.25 (S.D.N.Y. Nov. 23, 2004) (granting summary judgment in part based on determination that future lease obligations would not be counted in determining insolvency); *In re LaBrum & Doak LLP*, 227 B.R. 383, 386–91 (Bankr. E.D. Pa. 1998) (excluding future rent under lease in determining insolvency).  Other than Holdings, the only creditor to have filed a proof of claim in this case is Worldgate, and the Trustee believes that no portion of Worldgate's claim is based on amounts that were due at the time of either of the relevant transactions.

totaling approximately $12 million, show that the Debtor was adequately capitalized and that Holdings and its principals expected the Debtor to succeed.

47.    Litigation over the Trustee Claims would be very costly, as it would require extensive discovery through the production of documents and depositions of numerous defendants and non-defendant third parties.  In particular, the Trustee anticipates that she would need to consult and retain at least one expert witness on the issues of insolvency and capitalization. However, the Debtor's estate currently lacks the funds to employ an expert.

48.    As outlined above, the Holdings Parties have also indicated that they would vigorously defend against the Trustee Claims, which would likely require significant motions practice before a multi-day trial.  Litigation over the Trustee Claims would be extraordinarily cumbersome, expensive, and time consuming for the Trustee and the Estate; however, the Estate currently holds only approximately $30,000.00.

49.    In exercising her business judgment to enter into the Settlement Agreement, the Trustee considered that the funds available to her were insufficient to fund the litigation and that, upon information and belief, the principal defendant (Holdings) holds a substantial fund that is available to pay its legal fees and costs (as well as those of the other potential defendants whom, upon information and belief, Holdings is required to indemnify).  However, the Trustee believes that the fund held by Holdings would be reduced by the costs of any litigation.

50.    Even if the Trustee prevailed in litigation over the Trustee Claims, her ability to collect on any judgment is uncertain.  The potential defendants are sophisticated entities and individuals that may have asset protection strategies in place that could make collection difficult. Further, the potential defendants' resources would likely be reduced, if not depleted, by the expense of litigation.  Thus, there is also a risk that such litigation could result in one or more of

the Holdings Parties filing bankruptcy or otherwise being unable to satisfy a judgment.

51.     The Settlement Agreement is also in the best interests of the creditors.   The Settlement Agreement results in a significant recovery for the Estate and the withdrawal of Holdings' proof of claim.  Accordingly, all of the funds remaining after payment of administrative expenses and the Trustee's commission will be distributed to the sole remaining creditor, Worldgate.  Further, while the Parties were not able to reach a global settlement that included Worldgate, Worldgate was present at the Mediation and had the opportunity to participate in the Mediation to maximize the recovery by the Estate.

52.     The Settlement Agreement provides for a material distribution to creditors (i.e., Worldgate).  Although the mediation did not result in the consensual resolution of Worldgate's claim, the Trustee firmly believes that such claim is materially inflated and subject to significant reduction.   However, because Holdings has agreed to withdraw its proof of claim upon the Effective Date of the settlement, and Worldgate will be the sole recipient of distributions to non-priority creditors, the Trustee's Claim Objection may become moot, and the Estate will likely not be required to incur further expense in connection with that matter.

53.     The Trustee has also considered alternatives to the Settlement Agreement, including without limitation: (i) seeking litigation funding from Worldgate or other third parties; (ii) entering into an alignment agreement with Worldgate to pursue the Trustee Claims; and (iii) a sale of the Trustee Claims to Worldgate.  However, these options either were not available to the Trustee, or would have been unreasonable or impractical.

54.     Based on the foregoing, the Trustee has concluded in the exercise of her business judgment that the settlement is in the best interest of the Estate.

**B.  Inclusion of a Bar Order Provision is Warranted.**

16

55.     In addition to seeking general authority to enter into the Settlement Agreement, the

Trustee seeks the imposition of the Bar Order Provision prohibiting and enjoining all persons who

receive notice of this Motion and the Settlement Agreement from asserting and/or prosecuting any

of the claims or causes of action the Trustee asserted or could have asserted against any one or

more of the Holdings Parties, or that such person could have asserted derivatively on behalf of the

Debtor, the Debtor's subsidiaries, or the Estate.

56.     Ample authority exists for inclusion of the Bar Order Provision in the Approval

Order.  *See In re MCSGlobal Incorporated*, 562 B.R. 648, 655–56 (Bankr. E.D. Va. 2017); *see

also United States v. Hartog*, 597 B.R. 673, 680 (S.D. Fla. 2019) (approving bar order in settlement

agreement that enjoined all creditors from pursuing claims arising out of or related to claims the

trustee could have brought against the settling parties).  Further, the Court has jurisdiction to enter

the Approval Order with the Bar Order Provision.  *See In re Munford, Inc.*, 97 F.3d 449, 453 (11th

Cir. 1996) (nexus between third party claims and bankruptcy case provides related-to jurisdiction).

This United States District Court and the Fourth Circuit have affirmed this Court's entry of a bar

order entered as part of a settlement entered into by a trustee.  *See Fetner v. Hotel St. Cap., L.L.C.*,

No. 1:20-cv-828 (AJT/MSN), 2021 WL 1022585 (E.D. Va. Feb. 5, 2021), *aff'd*, No. 21-1285, 2021

WL 4922324 (4th Cir. Oct. 21, 2021).

57.     In determining whether a bar order provision is "fair and equitable," courts consider

a variety of factors, including (i) whether the non-debtor third-party claims that will be barred are

interrelated with the estate's claims; (ii) the likelihood of non-settling defendants prevailing on

barred claims; (iii) the complexity of the estate's litigation against the beneficiary of the bar order;

(iv) whether the litigation by the estate and other parties against the beneficiary of the bar order

would deplete resources; (v) the benefit of the bar order to the estate; (vi) support by non-objecting

parties sought to be enjoined; (vii) consideration being paid by the beneficiary of the bar order; and (viii) whether the effect of the bar order is consistent with the Bankruptcy Code's distribution scheme. *Hartog*, 597 B.R. at 680–81; *In re Grove Instruments, Inc.*, 573 B.R. 307, 315–16 (Bankr. D. Mass. 2017). Here, the factors weigh decisively in favor of inclusion of the Bar Order Provision.

58.    In this case, all of the claims and causes of action that are the subject of the Settlement Agreement (and the releases therein) are property of the Estate, and the Trustee is the sole party with standing to prosecute, settle, or release such claims and causes of action. "If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *Poth v. Russey*, 99 F. App'x 446, 457 (4th Cir. 2004) (quoting *Nat. Am. Ins. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439, 441 (4th Cir. 1999)); *see also Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*, 740 F.3d 875, 879 (3d Cir. 2013) ("After a company files for bankruptcy, 'creditors lack standing to assert claims that are "property of the estate."'" (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002))). "Creditors similarly lack standing to bring 'causes of action [that] are . . . similar in object and purpose to claims that the trustee could bring in bankruptcy,' regardless of whether such claims are technically part of the estate of the bankrupt." *Poth*, 99 F. App'x at 457 (quoting *Nat'l Am. Ins. Co.*, 187 F.3d at 441). Accordingly, the Trustee is the only party with standing to pursue the causes of action that would be subject to the Bar Order Provision.

59.    The Bar Order Provision is a condition to the effectiveness of the Settlement Agreement. The Holdings Parties have legitimate reasons to insist on its inclusion. Worldgate has conducted multiple 2004 examinations and threatened litigation against the Holdings Parties.

60.    The Trustee Claims are also complex, such that successful litigation would be

18

difficult and could drag on for years.  As discussed above, litigating the Trustee Claims would quickly deplete the assets of the Estate.

61.    The Bar Order Provision is also fair and equitable to non-debtor parties.  The Holdings Parties have agreed to pay the sum of $1.25 million to the Estate and to withdraw Holdings's proof of claim, subject to entry of the Approval Order.  Thus, any funds available after paying administrative expenses including the Trustee's commission will be distributed to Worldgate as the sole remaining creditor in accordance with the Bankruptcy Code's distribution scheme.

62.    Further, the Bar Order Provision is narrowly tailored to protect the terms of the settlement, as it prohibits third parties from asserting only claims that belong to the Estate and that are released by the Estate as part of the Settlement Agreement.  To the extent third parties, including Worldgate, have separate and particularized claims that are not property of the Estate, the Bar Order Provision would not impact any such claims.

<u>Conclusion</u>

WHEREFORE, the Trustee respectfully requests that the Court enter an order substantially in the form of the Approval Order (a) authorizing and approving the Settlement Agreement and the terms of the settlement between the Trustee and the Holdings Parties; (b) **barring and enjoining the Trustee, Debtor, the Debtor's subsidiaries, the Debtor's creditors and all other parties receiving notice of this Motion and the Settlement Agreement from filing, asserting, and/or prosecuting any claim, counterclaim, demand, or litigation over any of the claims or causes of action released in the Settlement Agreement, the Trustee Claims, or other claims or causes of action**

**that the Trustee has asserted or could have asserted against the Holdings**

**Parties and/or other Released Parties, or that such person could have asserted**

**derivatively on behalf of the Debtor or its Estate**; and (c) granting such other relief as

the Court deems just and proper.

Dated: July 1, 2024                               Respectfully Submitted,

                                                  JENNIFER J. WEST, CHAPTER 7 TRUSTEE

                                                  By: /s/ Robert H. Chappell, III                  

Robert H. Chappell, III, Esquire (VSB #31698)
Jennifer J. West, Esquire (VSB #47522)
Christopher A. Hurley, Esquire (VSB #93575)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:  (804) 697-2000
Facsimile:  (804) 697-2100
Email: rchappell@spottsfain.com
        jwest@spottsfain.com
        churley@spottsfain.com
*Counsel for Jennifer J. West, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July 2024, a true copy of the foregoing Motion was sent by electronic notice via CM/ECF on all parties requesting electronic notice in this case.  I further certify that service of the foregoing Motion will be supplemented once a hearing date has been selected and set for the Motion.

                                                  /s/ Robert H. Chappell, III

**<u>Exhibit A – Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
ALEXANDRIA DIVISION

_____
                                                                )
In re:                                                         )
                                                                )          Case No. 20-12470-KHK
ClubX, LLC,                                              )
                                                                )          Chapter 7 Proceeding
          Debtor.                                        )
                                                                )
_____ )

### ORDER GRANTING MOTION TO APPROVE SETTLEMENT AND COMPROMISE

Upon consideration of the *Motion to Approve Settlement and Compromise* (the "Motion")

filed by Jennifer J. West, Chapter 7 Trustee (the "Trustee") for the Bankruptcy Estate of ClubX,

LLC (the "Estate"), seeking approval of a settlement agreement (the "Settlement Agreement")

between the Trustee and Sport & Health Holdings, LLC ("Holdings"), VM Club Properties, LLC,

RT Sport & Health Holding, LLC, Green Stamps LLC, KonzKettle, LLC, Be The Change, L.L.C.,

Leslie Ariail, Trustee, EMS Residuary Trust, Leslie Ariail, Trustee, EMS Family Trust, Real

Property Advisors, L.L.C., The Minkoff Family Investment Club LLC, Thomas D.W. Fauquier,

Russell C. Minkoff, and Barry Minkoff (Holdings and the subsequently named parties being

referred to collectively as the "Holdings Parties"); and having considered the evidence presented,

the record in this bankruptcy case, and the arguments of counsel at the hearing held on

_____ (the "Hearing"); and it appearing that the Trustee has provided adequate notice of

_____
Robert H. Chappell, III, Esq. (VSB #31698)
Jennifer J. West, Esq. (VSB #47522)
Christopher A. Hurley, Esq. (VSB #93575)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Phone:  (804) 697-2000
Fax:  (804) 697-2100
Email:     rchappell@spottsfain.com
                jwest@spottsfain.com
                churley@spottsfain.com
*Counsel for Jennifer J. West,*
*Chapter 7 Trustee*

the Motion and no further notice of the Motion need be given; and it appearing that good cause

exists for granting the relief requested in the Motion; it is hereby:[1]

FOUND AND DETERMINED, that the Trustee and Holdings Parties acted in good faith

in negotiating and entering into the Term Sheet and the Settlement Agreement, such that the

Settlement Agreement, this Order, the Trustee, and the Holdings Parties are entitled and subject to

the protections of 11 U.S.C. § 363(m); and it is further

FOUND AND DETERMINED, that the Settlement Agreement reflects a proper exercise

of the Trustee's business judgment; and it is further

FOUND AND DETERMINED, that the terms of the Settlement Agreement are fair and

reasonable under the circumstances; and it is further

FOUND AND DETERMINED, that the approval and consummation of the Settlement is

in the best interest of the Debtor's Estate; and it is further

FOUND AND DETERMINED, that the Trustee has satisfied the requirements for approval

of the Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019; and it is further

FOUND AND DETERMINED, that entry of the Bar Order approved herein is necessary

and appropriate for all the reasons stated in the Motion and on the record at the Hearing;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED in its entirety;

2.      All objections to the Motion are OVERRULED for the reasons stated on the record

at the Hearing;

---

[1] All capitalized terms not defined herein shall have the same meaning as defined in the Motion or
the Settlement Agreement.

3.      The Settlement Agreement, as appended hereto as **Exhibit 1**, is APPROVED in all respects;

4.      The Trustee and the Holdings Parties are each authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the terms of the Settlement Agreement;

5.      The Trustee and Holdings may mutually agree to waive, without further approval from the Court, the condition that this Approval Order be a Final Order absent the existence of a stay of the Approval Order, or take any such other action to consummate this Agreement prior to the expiration of any time to appeal or petition for review, rehearing, certiorari, reargument or retrial of the Approval Order;

6.      **Upon the Effective Date, the Trustee, Debtor, and all other parties receiving notice of this Motion and the Settlement Agreement are hereby barred and enjoined from filing, asserting, and/or prosecuting any claim, counterclaim, demand, or litigation over any of the claims or causes of action released in the Settlement Agreement, or that the Trustee asserted or could have asserted against the Holdings Parties and/or other Released Parties, or that such person could have asserted derivatively on behalf of the Debtor or its Estate, including without limitation claims for fraudulent or voluntary conveyances, turnover, conversion, violation of the trust fund doctrine, unjust enrichment, imposition of a constructive trust, disallowance of a proof of claim, recharacterization of debt as equity, equitable subordination, breach of fiduciary duty, and breach of trust (the "Trustee Claims");**

3

7.     The confidentiality obligations set forth in the 2021 Protective Order (ECF No. 45),

the Stipulation and Agreed Protective Order (ECF No. 104) and the Mediation Order (ECF No.

152) shall remain in full force and effect; and

8.     The Court shall retain jurisdiction over all matters arising from or related to the

Settlement Agreement and/or to the interpretation, implementation, or enforcement of this Order.


IT IS SO ORDERED.

ENTER:          /          /

_____
JUDGE




WE ASK FOR THIS:


/s/ Robert H. Chappell, III
Robert H. Chappell, III, Esquire (VSB #31698)
Jennifer J. West, Esquire (VSB #47522)
Christopher A. Hurley, Esquire (VSB #93575)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:  (804) 697-2000
Facsimile:  (804) 697-2100
Email: rchappell@spottsfain.com
        jwest@spottsfain.com
        churley@spottsfain.com
*Counsel for Jennifer J. West,*
*Chapter 7 Trustee*

/s/ Bradford F. Englander
Bradford F. Englander, Esquire
WHITEFORD TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@whitefordlaw.com
*Co-Counsel to Sport & Health Holdings, LLC*


/s/ C. Bryan Wilson
C. Bryan Wilson, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Email: bwilson@wc.com
*Co-Counsel to Sport & Health Holdings, LLC*


## <u>LOCAL BANKRUPTCY RULE 9022-1(C) CERTIFICATION</u>

I hereby certify that the foregoing order has been endorsed by or served upon all necessary parties.


Date: _____, 2024          /s/ Robert H. Chappell, III
                                               Counsel

**<u>PARTIES TO RECEIVE COPIES:</u>**

Robert H. Chappell, III, Esquire
Jennifer J. West, Esquire
Christopher A. Hurley, Esquire
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:  (804) 697-2000
Facsimile:  (804) 697-2100
Email: rchappell@spottsfain.com
        jwest@spottsfain.com
        churley@spottsfain.com
*Counsel for Jennifer J. West,*
*Chapter 7 Trustee*

Bradford F. Englander, Esquire
WHITEFORD TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@wtplaw.com
*Co-Counsel to Sport & Health Holdings, LLC*

C. Bryan Wilson, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Email: bwilson@wc.com
*Co-Counsel to Sport & Health Holdings, LLC*

Stephen K. Gallagher, Esquire
Nicholas M. DePalma, Esquire
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
Phone: (703) 760-1600
Fax: (703) 821-8949
skgallagher@venable.com
nmdepalma@venable.com
*Counsel to Worldgate Centre Owner, LLC*

**<u>Exhibit B – Settlement Agreement</u>**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of the 13th day of June, 2024, by and between Jennifer J. West, solely in her capacity as Chapter 7 Trustee (the "Trustee") for ClubX, LLC, formerly known as S&H Holding Company, L.C. and also formerly known as Sport & Health Clubs, L.C. (the "Debtor") and Sport & Health Holdings, LLC ("Holdings"), VM Club Properties, LLC ("VM Club"), RT Sport & Health Holding, LLC ("RT"), Green Stamps LLC ("Green Stamps"), KonzKettle, LLC ("KonzKettle"), Be The Change, L.L.C. ("BTC"), Leslie Ariail, Trustee, EMS Residuary Trust ("EMS Residuary Trust"), Leslie Ariail, Trustee, EMS Family Trust ("EMS Family Trust"), Real Property Advisors, L.L.C. ("RPA"), The Minkoff Family Investment Club LLC ("Minkoff Family"), Thomas D.W. Fauquier ("Mr. Fauquier"), Russell C. Minkoff ("Russell Minkoff"), and Barry Minkoff.  VM Club, RT, Green Stamps, KonzKettle, BTC, EMS Residuary Trust, EMS Family Trust, RPA, Minkoff Family, Mr. Fauquier, Russell Minkoff, and Barry Minkoff, together with Holdings, are referred to collectively herein as the "Holdings Parties," and individually as a "Holdings Party."  The Trustee and the Holdings Parties are referred to collectively herein as the "Parties," and individually as a "Party."

## Recitals

A.      On November 5, 2020, the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), commencing case no. 20-12470-KHK (the "ClubX Case").

B.      On or about November 5, 2020, H. Jason Gold, Esquire, was appointed Chapter 7 Trustee of the Bankruptcy Estate of the Debtor.  Mr. Gold resigned as Chapter 7 Trustee on April 22, 2022.  Jennifer J. West, Esquire, was appointed as Successor Chapter 7 Trustee on April 30, 2022, and continues to serve as Trustee of the Debtor's estate (the "Estate").

C.      Only two creditors filed proofs of claims.  On April 22, 2021, Worldgate Centre Owner, LLC ("Worldgate") filed a proof of claim for $27,968,342.65 arising from the Debtor's guaranty of the lease of the property where the Debtor's subsidiary, Sport and Health Virginia Properties, L.C. ("Virginia Properties"), previously conducted business operations.  On April 23, 2021, Holdings filed a proof of claim for $11,986,790.87, supported by an itemized statement, for funds advanced to the Debtor to support its continued operation.

D.      On November 4, 2022, the Trustee filed an objection to Worldgate's proof of claim, clerk's docket no. 132 (the "Claim Objection").  To date, Worldgate has failed to substantiate its proof of claim to the Trustee's satisfaction.

E.      The Trustee conducted substantial investigations and due diligence inquiry regarding, among other things, possible claims and causes of action against the Holdings Parties.

F.      To further facilitate settlement discussions, the Parties entered into a series of tolling agreements, starting effective November 4, 2022, and extending to another tolling agreement effective May 30, 2024, extending the applicable statutes of limitations applicable to possible causes of action held by the Trustee (as in effect, or as may be extended hereafter, the

"Tolling Agreements"). The Tolling Agreements are currently set to expire on August 30, 2024. Worldgate was neither a beneficiary of nor a signatory to the Tolling Agreements.

G.       On September 29, 2023, the Trustee filed a Motion Requesting Judicial Mediation, clerk's docket no. 143 (the "Mediation Motion"). In the Mediation Motion, the Trustee sought the appointment of a judicial mediator to facilitate negotiations with respect to her potential claims against the Holdings Parties (the "Trustee Claims"), as well as her Claim Objection to the proof of claim filed by Worldgate.

H.       On November 3, 2023, the Bankruptcy Court entered its Order Granting Motion Requesting Judicial Mediation, clerk's docket no. 152, which was modified by the Joint Stipulation Modifying Mediation Order, clerk's docket no. 155 (together, the "Mediation Order"). Pursuant to the Mediation Order, the Bankruptcy Court appointed the Honorable Kevin R. Huennekens as the mediator (the "Mediator") with respect to the Trustee Claims and the Claim Objection.

I.       On April 9, 2024, the Mediator conducted the Mediation among the Trustee, certain of the Holdings Parties' representatives, and Worldgate representatives (the "Mediation"). During the Mediation, the Trustee and the Holdings Parties negotiated in good faith, succeeded in resolving their disputes regarding the Trustee Claims, and entered into a Binding Term Sheet Settling All Claims Subject To Federal Rule Of Evidence 408 (the "Term Sheet"). Among other things, the Term Sheet provided for the Parties to enter into a more detailed settlement agreement. This Agreement is intended to formalize the terms of the settlement between the Trustee and the Holdings Parties, and to supersede the Term Sheet. During the Mediation the Trustee was unable to resolve her Claim Objection with Worldgate.

J.       Based on her extensive investigations, the Trustee, in the exercise of her business judgment, has concluded that the settlement set forth herein is in the best interests of the Debtor and the Estate.

NOW, THEREFORE, the Parties hereby agree as follows:

## Agreement

1.       Payment. On the Effective Date (as defined in paragraph 8, below), and subject to the satisfaction of the conditions set forth therein, Holdings shall pay to the Trustee the sum of One Million Two Hundred Fifty Thousand and No/100 Dollars ($1,250,000.00) (the "Settlement Payment"). Payment shall be made by certified check payable to the Trustee or wire transfer to the Trustee's counsel pursuant to instructions to be provided by the Trustee consistent with the requirements of paragraph 8 below.

2.       9019 Motion and Approval Order. The Trustee, in consultation with Holdings, has prepared a motion (the "9019 Motion") pursuant to Bankruptcy Code section 363 and Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 9019, and a proposed order approving this Agreement (the "Approval Order"), including, among other customary provisions: (a) a bar order provision (the "Bar Order Provision") prohibiting and enjoining all persons who receive notice of the settlement (including without limitation Worldgate) from filing, asserting and/or prosecuting any claim, counterclaim, demand or litigation over any of the claims or causes of action released in this Agreement, or that the Trustee asserted or could have asserted against the Holdings Parties

and/or other Released Parties (defined below), or that such person could have asserted derivatively on behalf of the Debtor or its Estate, including without limitation claims for fraudulent or voluntary conveyances, turnover, conversion, violation of the trust fund doctrine, unjust enrichment, imposition of a constructive trust, disallowance of a proof of claim, recharacterization of debt as equity, equitable subordination, breach of fiduciary duty, and breach of trust (the "<u>Trustee Claims</u>"); (b) a finding and determination that the Parties acted in good faith in negotiating and entering into the Term Sheet and this Agreement; and (c) a finding that the Holdings Parties are entitled to the benefits and protections set forth in Section 363(m) of the Bankruptcy Code, such that the reversal or modification on appeal does not affect the validity of this Agreement absent a stay pending such appeal.  The inclusion of the Bar Order Provision, the findings regarding good faith, and the applicability of Section 363(m) are material terms of this Agreement.  The Holdings Parties and the Trustee have approved the form and substance of the Approval Order, which may only be waived with the consent of Holdings and the Trustee.

3.   <u>Prosecution of 9019 Motion</u>.  Within two (2) business days following the execution and delivery of this Agreement, the Trustee shall file, seek a prompt hearing on, give notice to all creditors and parties in interest, and support and advocate for approval of this Agreement. Holdings likewise shall support and advocate for approval of this Agreement.  In the event of any appeal or motion to stay or modify the Approval Order, the Trustee shall defend such appeal or motion, and Holdings shall support and advocate for such defense by the Trustee.

4.   <u>Mutual General Releases</u>.  On the Effective Date, and subject to the conditions thereto, and to the concurrent delivery of the Settlement Payment to the Trustee, the Trustee (on behalf of herself, the Debtor, the Estate, and each of their respective heirs, legatees, devisees, successors and assigns), on the one hand, and the Holdings Parties (on behalf of themselves, their heirs, legatees, devisees, successors and assigns), on the other, hereby release, waive and forever discharge and exonerate each other, and each of their parents, subsidiaries, affiliates, owners, agents, attorneys, law firms, employees, members, officers, directors, representatives, predecessors, successors, assigns, heirs, and legatees (collectively, "<u>Released Parties</u>" and individually a "<u>Released Party</u>") of and from any and all claims, demands, causes of action, accounts, obligations and liabilities, arising or existing from the day before the beginning of time through and including the Effective Date, whether known or unknown, matured or unmatured, liquidated or unliquidated, fixed or contingent, legal or equitable, direct or derivative ("<u>Released Claims</u>").  Without limiting the generality of the foregoing, "Released Claims" include any and all claims, causes of action, rights and powers that the Trustee has pursuant to Section 544 of the Bankruptcy Code and the Trustee Claims.  Notwithstanding the foregoing: (a) nothing herein shall release or affect the rights or obligations of the Parties under this Agreement, and (b) nothing herein shall release or affect the rights, claims, causes of action, counterclaims or defenses of any Party against Worldgate or any of Worldgate's parents, subsidiaries, affiliates, owners, agents, attorneys, law firms, employees, members, officers, directors, representatives, successors, assigns, heirs, and legatees, all such rights being expressly reserved.  The Trustee and the Holdings Parties hereby represent, warrant, and covenant that they have not assigned, and will not assign, any Released Claims to any other person.

5.   <u>Covenant Not To Sue</u>.  On the Effective Date, and subject to the conditions thereto, and to the concurrent delivery of the Settlement Payment to the Trustee, the Trustee (on behalf of herself, the Debtor, the Estate, and each of their heirs, legatees, devisees, successors and assigns),

on the one hand, and the Holdings Parties (on behalf of themselves, their heirs, legatees, devisees, successors and assigns), on the other, covenant not to sue one another, cause or support any third party to sue one another, cause the other to be sued, or file any motion, petition, or action concerning any of the Released Claims or the subject matter thereof, other than to obtain the approval of and enforce the terms of this Agreement.

6.      Holdings Proof of Claim.  Within five (5) business days following the Effective Date, and subject to the satisfaction of the conditions thereto, Holdings shall withdraw its proof of claim in the ClubX Case with prejudice.

7.      Tolling.  The Trustee and the Holdings Parties shall continue and extend the existing Tolling Agreements through and including 30 days after any order on the 9019 Motion becomes a Final Order (as defined below), at which time the Tolling Agreements shall expire and be of no further effect.

8.      Effective Date and Conditions.  The occurrence of the Effective Date and the transactions that are to occur on the Effective Date, as set forth in this Agreement, shall be on the first business day following the satisfaction or due waiver in writing by the Trustee and Holdings of all of the following: (a) the entry of the Approval Order in a form and substance that is acceptable to Holdings and the Trustee; (b) the Approval Order shall have become a Final Order (unless the Trustee and Holdings agree in writing to waive finality); and (c) either (i) the Trustee shall have delivered to Holdings a completed, current W-9 and wiring instructions for the Trustee's counsel written on the Trustee's letterhead, which shall include the verified phone number of the authorized recipient so that Holdings can call the authorized recipient to verify the wiring instructions verbally, or (ii) the Parties shall have agreed that the Settlement Payment shall be made by certified check payable to the Trustee.  For the purposes of this Agreement, "Final Order" means an order, ruling, or judgment, issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (A) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (B) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted; *provided that* the possibility that a request for relief under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, the local rules of the Court, or applicable non-bankruptcy law, may be filed relating to such order, shall not prevent such order from being a Final Order. The Approval Order shall provide that the Trustee and Holdings may mutually agree to waive, without further approval from the Court, the condition that the Approval Order be a Final Order absent the existence of a stay of the Approval Order, or take any such other action to consummate this Agreement prior to the expiration of any time to appeal or petition for review, rehearing, certiorari, reargument or retrial of the Approval Order.

9.      Dispute Resolution.  All disputes between the Trustee and any one or more of the Holdings Parties under this Agreement before the Effective Date shall be resolved by binding arbitration before the Mediator, with the prevailing party awarded its costs to include reasonable attorneys' fees.  Disputes arising between the Trustee and any one or more of the Holdings Parties from and after the Effective Date shall be determined by the Bankruptcy Court, and in such event

4

the Parties agree that the Bankruptcy Court shall have authority to hear and determine such disputes without report and referral to the District Court. The Parties waive any and all rights to trial by jury with respect to disputes arising under this Agreement.

10.   <u>Confidentiality</u>.  The confidentiality obligations set forth in the 2021 Protective Order (ECF No. 45), the Stipulation and Agreed Protective Order (ECF No. 104) and the Mediation Order (ECF No. 152) shall remain in full force and effect.

11.   <u>No Admissions.</u>  The Parties each deny any liability to one another, and the execution of this Agreement is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, arbitration, proceeding, or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by the Parties with respect to any of the matters addressed in this Agreement. In the event that any of the conditions to the Effective Date fail (including without limitation that the Approval Order is not entered, is modified in a fashion not acceptable to all Parties, or is reversed or vacated), nothing in this Agreement shall be deemed or construed to diminish, waive, alter or affect any Party's respective claims or defenses, all of which are reserved.

12.   <u>Further Assurances</u>.  Upon written request from a Party, the Parties hereto shall execute and deliver to the requesting Party such other and further documentation that is necessary or appropriate to effectuate or confirm the terms of this Agreement.

13.   <u>Counterpart Execution</u>.  This Agreement may be signed in counterparts, all of which collectively shall be a single Agreement. All such counterparts shall collectively be deemed to be an original.

14.   <u>Facsimile Signature</u>.  Any Party to this Agreement may sign a copy of the agreement in original and send a copy of the Agreement so executed by electronic or facsimile transmission to the other signatories followed by delivery of a copy of the Agreement signed in original to the other Parties. Delivery of an executed counterpart of a signature page by electronic mail, facsimile or PDF transmission shall be as effective as delivery of an original, manually executed, counterpart copy.

15.   <u>Entire Agreement</u>.  This Agreement and the Tolling Agreements shall constitute the complete, exclusive and entire understanding and Agreement of the Parties with respect to its subject matter, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon any Party hereto unless expressed herein. No provisions of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing signed by the Party against whom such amendment is to be enforced. No waiver by any Party hereto at any time of any breach by the other Parties hereto, or failure or lack of compliance with any condition or provision of this Agreement to be performed by such other Parties, shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time. No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by any Party which are not set forth expressly in this Agreement.

16.   <u>Successors and Assigns</u>.  The respective benefits and burdens of this Agreement shall inure to the benefit and burden of the Parties and their respective heirs, legatees, successors and assigns.

17.   <u>No Third-Party Beneficiaries</u>.  Nothing contained in this Agreement shall create or enlarge any rights, remedies or defenses in favor of any creditor, person or party of interest that is not a Party to this Agreement.

18.   <u>Headings</u>.  The headings and captions of this Agreement are inserted for convenience only and shall have no effect upon the construction or interpretation hereof.

19.   <u>Choice of Law</u>.  This Agreement shall be governed and construed by the laws of the Commonwealth of Virginia, without regard to conflicts of laws principles.  All parties have reviewed and helped to draft this Agreement through counsel of their choosing in an arm's length transaction.

**AGREED AND ACCEPTED.**

JENNIFER J. WEST, CHAPTER 7 TRUSTEE
FOR THE ESTATE OF CLUBX, LLC

SPORT & HEALTH HOLDINGS, LLC

By: _____

Title: _____Thomas D. W. Fauquier, Authorized Manager_____

VM CLUB PROPERTIES, LLC

By: _____

Title: ____By TRB Management, LLC, by Thomas D. W. Fauquier, Authorized Manager____

RT SPORT & HEALTH HOLDING, LLC

By: _____

Title: _____Thomas D. W. Fauquier, Authorized Manager_____

6

GREEN STAMPS LLC

By: _____

Title: _____


KONZKETTLE, LLC

By: _____

Title:  _____


BE THE CHANGE, L.L.C.

By: _____

Title:  _____


LESLIE ARIAIL, TRUSTEE, EMS RESIDUARY TRUST

By: _____

Title:  _____


LESLIE ARIAIL, TRUSTEE, EMS FAMILY TRUST

By: _____

Title:  _____


REAL PROPERTY ADVISORS, L.L.C.

By: _____

Title:  _____

7

GREEN STAMPS LLC

By: _____

Title: _____


KONZKETTLE, LLC

By: _____

Title: Manager   Donald W Konz


BE THE CHANGE, L.L.C.

By: _____

Title: _____


LESLIE ARIAIL, TRUSTEE, EMS RESIDUARY TRUST

By: _____

Title: _____


LESLIE ARIAIL, TRUSTEE, EMS FAMILY TRUST

By: _____

Title: _____


REAL PROPERTY ADVISORS, L.L.C.

By: _____

Title: _____

7

GREEN STAMPS LLC

By: _____

Title: _____


KONZKETTLE, LLC

By: _____

Title: _____


BE THE CHANGE, L.L.C.

By: _____

Title: _____


LESLIE ARIAIL, TRUSTEE, EMS RESIDUARY TRUST

By: _____

Title: _____


LESLIE ARIAIL, TRUSTEE, EMS FAMILY TRUST

By: _____

Title: _____


REAL PROPERTY ADVISORS, L.L.C.

By: _____

Title: _____

7

GREEN STAMPS LLC

By: _____

Title: _____


KONZKETTLE, LLC

By: _____

Title: _____


BE THE CHANGE, L.L.C.

By: _____

Title: _____


LESLIE ARIAIL, TRUSTEE, EMS RESIDUARY TRUST

By: _____

Title: Trustee _____


LESLIE ARIAIL, TRUSTEE, EMS FAMILY TRUST

By: _____

Title: trustee _____


REAL PROPERTY ADVISORS, L.L.C.

By: _____

Title: _____

7

GREEN STAMPS LLC

By: _____

Title: _____


KONZKETTLE, LLC

By: _____

Title: _____


BE THE CHANGE, L.L.C.

By: _____

Title: _____


LESLIE ARIAIL, TRUSTEE, EMS RESIDUARY TRUST

By: _____

Title: _____


LESLIE ARIAIL, TRUSTEE, EMS FAMILY TRUST

By: _____

Title: _____


REAL PROPERTY ADVISORS, L.L.C.

By: _____

Title: ___Thomas D. W. Fauquier, Managing Member___

7

THE MINKOFF FAMILY INVESTMENT CLUB LLC

By: _____

Title: _____

THOMAS D.W. FAUQUIER

By: _____

RUSSELL C. MINKOFF

By: _____

BARRY MINKOFF

By: _____

THE MINKOFF FAMILY INVESTMENT CLUB LLC

By: _____

Title: _____

THOMAS D.W. FAUQUIER

By: _____

RUSSELL C. MINKOFF

By: _____

BARRY MINKOFF

By: _____

THE MINKOFF FAMILY INVESTMENT CLUB LLC

By: _____

Title: _____


THOMAS D.W. FAUQUIER

By: _____


RUSSELL C. MINKOFF

By: _____


BARRY MINKOFF

By: _____


8