**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

In re:

ClubX, LLC,                                          Case No. 20-12470-KHK

Debtor.                                              (Chapter 7)

## MEMORANDUM OPINION

This matter came before the Court on September 5, 2024, for a hearing on the Trustee's Motion to Approve Settlement (Docket No. 159) (the "Motion")[1]. Through this Motion, the Trustee seeks to settle certain claims between ClubX, LLC (the "Debtor"), Sport & Health Holdings, LLC ("Holdings"), VM Club Properties, LLC ("VM Club"), RT Sport & Health Holdings, LLC ("RT"), Green Stamps LLC, KonzKettle, LLC, Be The Change, LLC, Leslie Ariail, Trustee, EMS Residuary Trust, Leslie Ariail, Trustee, EMS Family Trust, Real Property Advisors, LLC, The Minkoff Family Investment Club, LLC, Thomas D.W. Fauquier, Russell C. Minkoff, and Barry Minkoff (Barry Minkoff) (collectively, the "Holdings Parties"). At core, the Trustee asserts that she seeks to settle estate claims that she may have against the Holdings Parties.[2] The Settlement Agreement ("Settlement") provides for payments by Holdings to the estate, mutual releases and a bar order.[3]

Worldgate Centre Owner, LLC ("Worldgate"), a creditor in this case, filed an objection (Docket Nos. 166, 168, 170), to the Settlement, asserting that it fails to meet the standard for approval of settlements under Federal Rule of Bankruptcy Procedure 9019, and that the releases in the Settlement are not supported by consideration from all proposed releasees. Additionally, citing to the Supreme Court's ruling in *Harrington v. Purdue Pharma, L.P.*, 144 S.Ct. 2071, 2078 (2024), Worldgate asserts that it has not consented to the release and that its consent is required. The last assertion is based on the premise that

---

[1] All defined terms used but not otherwise defined herein have the meanings ascribed to them in the Trustee's Motion.
[2] Motion, pg. 32, Exhibit B, (Settlement Agreement).
[3] Motion, pg. 9.

Worldgate's claims are being released as part of the Settlement. Holdings filed a response in support of the Settlement arguing that Worldgate's objections were unfounded. (Docket No. 164).

Based on the record before the Court, argument of counsel, and for the reasons that follow, the Court finds that the proposed Settlement and bar order are fair and equitable, that with respect to the Trustee's releases, it only releases claims owned by the estate, that it does not release claims owned by Worldgate and therefore, the Court will approve the Settlement and will grant the Trustee's Motion.

## Factual Background

In April of 2024, the Trustee, representatives for the Holdings Parties and Worldgate participated in a mediation, with the Honorable Kevin R. Huennekens acting as mediator. The mediation related to i) the Trustee's potential claims against the Holdings Parties (the "Trustee Claims") and ii) the Trustee's objection to Worldgate's proof of claim for $27,968,342.65 relating to the Debtor's guaranty of a lease of property where the Debtor's subsidiary, Sport and Health Virginia Properties, LLC, previously conducted business operations (the "Claim Objection"). Docket No. 159, pg. 29. The Trustee Claims include (i) fraudulent and voluntary conveyances and obligations related to the 2014 Transaction[4] and the 2018 Transaction[5]; (ii) conversion; (iii) equitable claims related to the 2014 Transaction and the 2018 Transaction; (iv) breach of fiduciary duties and/or breach of trust; and (v) disallowance or recharacterization of Holdings' proof of claim together with any and all other claims the Trustee raised or could raise or assert on behalf of the estate against the Holdings Parties.

---

[4] In or around August 2014, the Debtor and the S&H Entities, as described in the Trustee's Motion, engaged in a transaction through which they, among other things, sold certain intellectual property and effectively all but three of the Clubs and their related assets. The Trustee asserts that although the 2014 Transaction involved the sale of a majority of the assets of the Debtor or its subsidiaries, the consideration paid for those assets did not flow through the Debtor and was instead directed to Holdings. For example, Holdings received a Promissory Note in the approximate amount of $21 million (the "Promissory Note") and securities (the "Securities") from the purchaser.

[5] As described in the Trustee's Motion, in March 2018, the Holdings Group was involved in another transaction related to the Clubs, through which the Holdings Group received additional consideration. The Trustee asserts that the result of the 2018 Transaction was to further consolidate the Holdings Group's assets at the level of Holdings, its members, and/or its affiliates, where they were out of the reach of creditors of the Debtor and/or its subsidiaries. For instance, the Trustee asserts that Holdings directly received payments on obligations that were owed, in part, to the Debtor and/or its subsidiaries, such as the Promissory Note and Securities.

2

At the conclusion of the mediation, the Trustee and the Holdings Parties were able to agree on a resolution of their disputes regarding the Trustee Claims, but the Trustee and Worldgate were not able to agree on a resolution for her Claim Objection to Worldgate's claim. *Id*.

The high-level terms of the Settlement are that Holdings will pay to the Trustee $1,250,000 in exchange for the Trustee releasing the Trustee's Claims. The Holdings Parties and their related parties also agree to release the Trustee from any claim they have against the estate and to withdraw their proof of claim (Claim 2-1) in the amount of $11,986,790.87. Without exhaustively describing the terms of the Settlement, the general structure is that in exchange for payment, the Trustee, the Holdings Parties and their agents are providing mutual releases of their own claims. Docket No. 159, pg. 31. With respect to the Trustee, the Settlement makes clear that her claims include causes of action that she has the power to pursue under section 544 of the Bankruptcy Code, such as fraudulent transfer actions that might have been available to individual creditors pre-petition but became property of the estate post-petition. The Settlement also provides for a bar order prohibiting and enjoining all persons who receive notice of the Settlement (including without limitation Worldgate) from filing, asserting and/or prosecuting any claim released under the Settlement. The Settlement excludes from released claims any claims that a party might have against Worldgate.

At the hearing, the Trustee testified that she determined settlement was the best approach for the estate because the assets available in the estate totaled approximately $30,000, meaning there were limited funds to conduct litigation or an investigation, particularly in light of the animosity between Worldgate and Holdings. The Trustee testified that her team determined it would cost $1-1.5 million to litigate the Trustee Claims and that at the time the parties entered into tolling agreements to facilitate potential settlement talks, the Trustee's legal team had already billed $150,000. In particular, the Trustee anticipated the need to engage in extensive discovery as well as hire at least one expert for purposes of proving insolvency and undercapitalization. While the Trustee considered contingency counsel, she determined it was not practical because of the uncertainty surrounding damages and the potential recovery for such counsel. Further, there was little time to bring any causes of action as she only had six months from her appointment to identify

3

and bring such actions. Additionally, the Trustee was concerned about having to prove, among other things, insolvency and inadequate capitalization, as well as the need to overcome certain defenses that might be asserted, such as statute of limitation defenses with respect to the Holdings Parties. In addition to these difficulties, the Trustee also asserted her concern about collectability of any judgment she might obtain against the Holdings Parties given that they are sophisticated entities that might have asset protection strategies in place to make collection difficult. Further, the Trustee asserted that litigation with the Holdings Parties would reduce or possibly eliminate resources that could be used to satisfy the Trustee Claims.

During the hearing, a draft complaint was entered into evidence under seal. As is relevant to the instant dispute, the complaint included causes of action that the Trustee might assert. A review of the draft complaint revealed that the causes that would be asserted therein were all estate causes of action that only the Trustee had standing to bring post-petition.

## Conclusions of Law

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this district on August 15, 1984. This is a core proceeding as it concerns the administration of the estate and approval of use of property of the estate. 28 U.S.C. § 157(b)(2)(A) and (M).

Settlements under Federal Rule of Bankruptcy Procedure 9019 must be "fair and equitable." *In re Alpha Nat. Res., Inc.*, et al., 544 B.R. 848, 857 (Bankr. E.D. Va. 2016) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)). The court analyzes four factors in determining whether to approve a settlement under this standard: (i) the probability of success in litigation; (ii) the potential difficulties in any collection; (iii) the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interest of the creditors. *See In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (citing *In re Martin*, 91 F.3d 389, 393 (3d. Cir. 1996)); *see also In re Three Rivers Woods, Inc.*, No. 98–38685, 2001 WL 720620 at *5–6 (Bankr. E.D. Va. Mar. 20, 2001). "In essence, a compromise or settlement will likely gain approval if it is both 'fair and equitable,' as well as representative of the best interests of the estate as a whole." *In*

4

Case 20-12470-KHK    Doc 178    Filed 12/19/24    Entered 12/19/24 13:40:45    Desc Main
                             Document      Page 5 of 12

*re Three Rivers Woods Inc.*, 2001 WL 720620 at *6 (internal citations omitted). A bankruptcy judge is not required to "conduct a full evidentiary hearing or mini trial" before approving a settlement. *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also DePoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994)). Instead, the Court must decide "whether the settlement falls 'below the lowest point in the range of reasonableness.'" *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995); accord *In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 857 (Bankr. E.D. Va. 2016).

The Court will address each factor in turn.

(i)    Probability of Success in Litigation

Here, the Trustee has established that the estate lacks the available funds to litigate the various claims that are being settled in this matter. The uncontroverted evidence adduced at the hearing established that the estimated costs of the litigation are approximately $1-1.5 million, and the estate only had, at the start of these negotiations, approximately $30,000 on hand. Further, the Trustee's evidence established that her legal team had already billed $150,000 at the time that tolling agreements were entered into for purposes of facilitating settlement discussions between the parties. Without sufficient funds to litigate, the Court finds that the Trustee has little chance of success in litigation. Worldgate has not provided evidence to the contrary. Additionally, the Trustee also testified that she was concerned about her ability to prove insolvency and undercapitalization for purposes of establishing support for certain of her causes of action. While that question is one that is fact intensive, the Court need not conduct a mini trial to evaluate this issue, and it suffices to say that the Trustee's lack of funds to hire the experts necessary to establish insolvency and undercapitalization further underscores her lack of probability of success in litigating these matters. The same is true for the Trustee's concerns regarding any statute of limitation defenses that might be raised by the Holdings Parties and the Trustee's need to establish other facts that would require extensive, costly, discovery.

Worldgate argues that this element is not established merely by asserting that there are high costs of litigation; however, Worldgate seems to ignore that not only are costs high, but that the estate cannot

5

afford to fund the litigation necessary to win on the Trustee Claims. Further, if Worldgate believes these claims are so viable, it has been free all along to fund the necessary litigation, but it has chosen not to do so opting instead to propose that the Trustee abandon the claims.

Worldgate also argues that the Settlement involves non-party releases, but as will be discussed further below with respect to the bar order, that is simply not the case—the Settlement releases estate causes of action or claims held by the Holdings Parties.[6] There is no question that the Court has jurisdiction over the estate causes of action as they are property of the estate, and where the only other parties providing releases are doing so by consent, the Court can undoubtedly exercise jurisdiction over those claims particularly when they relate to claims against the estate that would clearly have an effect on the estate. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) (bankruptcy courts may adjudicate Article III claims by consent of the litigants); see *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986) (bankruptcy court has "related to" jurisdiction if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy).

Accordingly, the first factor weighs in favor of approving the Settlement.

(ii)     Potential Difficulties in Collection

The lack of estate funds makes collection just as difficult as litigating. Further, the Trustee testified that while she believes that the Holdings Parties have significant funds available for collection, litigating against them when they have indicated they would mount a vigorous defense against the Trustee Claims would only serve to diminish the available estate funds. The Trustee also indicated that she believes that collection might be difficult against sophisticated entities like the Holdings Parties, who may have asset protection strategies in place that would frustrate collection efforts.

---

[6] The causes of action being released by the Trustee are either derivative or derived from the Debtor's rights due to harms against the estate as a whole, such as breach of fiduciary duty claims, fraudulent transfer claims, conversion and other similar relief that seeks relief for the estate, and not to redress individualized harms against third parties. *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 88-89 (2d Cir. 2014); see also *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (holding that because a fraudulent conveyance action was property of the estate, individual creditors' claims were "so similar in object and purpose to claims that the trustee could bring in bankruptcy court that the [creditors] lack standing to pursue these claims"); *Poth v. Rossey*, 99 Fed.Appx. 446 (4th Cir. Mar. 30, 2004) (holding that only trustee had standing to bring breach of fiduciary duty claim).

  Worldgate again cites to *Purdue* in arguing that factor two has not been established. However, *Purdue* did not deal with consensual releases of estate causes of action; instead, it dealt with nonconsensual releases of claims by third parties. Therefore, the Court finds Worldgate's reliance on *Purdue* is misplaced.

  Accordingly, this factor weighs in favor of approving the Settlement.

(iii) Complexity of the Litigation and the Expense, Inconvenience, and Delay Necessarily Attending It

  As previously indicated, the Trustee believes that there are numerous fact intensive issues that must be established to prove her Claims, including insolvency, undercapitalization, and potential statute of limitation defenses to be overcome. Further, the time required to pursue and the expense for this litigation, including the costs of any potential collection efforts, when compared to the available estate funds, is exceedingly high. Simply put, the estate cannot afford to litigate these claims and the proposed Settlement allows for a resolution that reduces claims against the estate and actually infuses significant funds into the estate.

  Worldgate argues that the Trustee can avoid the costs of litigation by abandoning the claims she seeks to release in the Settlement which would allow creditors like Worldgate to potentially bring those claims. However, the Court finds that this argument ignores that the Settlement provides for Holdings' withdrawal of its $11,986,790.87 proof of claim and will provide the infusion of $1,250,000 into the estate which will cover administrative expenses in the case, in addition to providing a distribution to Worldgate. Worldgate's proposal is for the Trustee to abandon what is clearly a valuable asset of the estate, that appears to at present be worth the withdrawal of a nearly 12 million dollar claim and a payment of 1.25 million dollars, when the Trustee has existing administrative expenses to cover. Abandonment is not appropriate for valuable assets – it is to be used for assets that are burdensome or of inconsequential value. 11 U.S.C. § 544(a).

  Accordingly, this factor weighs in favor of approving the Settlement.

(iv) Paramount Interest of the Creditors

7

Here, the Settlement results in a significant infusion of funds that will actually allow for some recovery to the non-priority creditors in this case. Ironically, the only objecting party, Worldgate, will be the only non-priority creditor to receive a distribution in this case and yet they oppose it, whereas without it, the only available funds in the estate would be exhausted by administrative expenses and Holdings' proof of claim would not be resolved and withdrawn, as it is under the Settlement.

Worldgate argues that this factor does not weigh in favor of approval because the parties to the Settlement preserved their abilities to bring claims against Worldgate. It is surprising to see this argument from Worldgate, who is not party to the Settlement and who is not providing releases. It would make no sense for the Trustee and Holdings to release claims against Worldgate while receiving no consideration for such releases from Worldgate. It is particularly surprising for Worldgate to make this argument considering they also assert that the releases under the Settlement are not supported by consideration. With respect to Worldgate's argument that the releases lack consideration from the parties who are not paying the $1.25 million, the Settlement provides that each released party is also granting a mutual release. In other words, each release is being given in exchange for another release.

Additionally, as the Trustee points out, Holdings is providing the Settlement payment under its indemnification obligation to the other Holdings Parties. The other Holdings Parties apparently have an ownership interest in Holdings, which would mean that they each have an interest (albeit indirectly) in the funds that would be used to make the payment under the Settlement.

While Worldgate asserts that it would be prevented from asserting counterclaims against the Settlement Parties to the extent those parties brought claims against Worldgate, that is simply not the case because any individualized claim Worldgate might have had outside of bankruptcy that is not property of the estate is not being released under the Settlement. Separately, while Worldgate asserts that the test should be whether the Settlement is in the paramount interests of Worldgate, the true test is whether the Settlement is in the paramount interest of creditors. The Settlement provides that Holdings will have its claim resolved consensually, and the proceeds of the Settlement Payment will be used to pay down administrative costs in the case and will otherwise be distributed to Worldgate. Absent the Settlement, the

8

estate would be left administratively insolvent, Holdings' claim would remain intact, and assuming the Trustee Claims are abandoned to Worldgate, the only creditor that might benefit is Worldgate.

Accordingly, the fourth factor weighs in favor of approving the Settlement.

Application of the above-stated factors establish that the Settlement falls well above the lowest point in the range of reasonableness and is a reasonable exercise of the Trustee's business judgment under the circumstances.

The Settlement also calls for imposition of a bar order to ensure that the releases under the Settlement truly extinguish the released claims. The standard for approval of such bar orders is the "fair and equitable" standard.

In determining whether a bar order provision is "fair and equitable," courts consider factors including (i) whether the non-debtor third-party claims that will be barred are interrelated with the estate's claims; (ii) the likelihood of non-settling defendants prevailing on barred claims; (iii) the complexity of the estate's litigation against the beneficiary of the bar order; (iv) whether the litigation by the estate and other parties against the beneficiary of the bar order would deplete resources; (v) the benefit of the bar order to the estate; (vi) support by non-objecting parties sought to be enjoined; (vii) consideration being paid by the beneficiary of the bar order; and (viii) whether the effect of the bar order is consistent with the Bankruptcy Code's distribution scheme. *In re Grove Instruments, Inc.*, 573 B.R. 307, 315–16 (Bankr. D. Mass. 2017).

Here, the bar order only bars estate causes of action and any claims held by the Holdings Parties. The Court is not aware of any Worldgate claims that are interrelated with the estate's claims. Moreover, non-settling parties, like Worldgate have no chance of prevailing on the barred claims because they do not have standing to bring them. In the case of the causes of action that Worldgate might have had standing to bring pre-petition, such as state law fraudulent transfer actions, for example, the filing of a petition under the Bankruptcy Code rendered those causes of action estate property and deprived Worldgate of standing when the estate was created under section 541 of the Code. The Court has already ruled that the complexity of the litigation against the Holdings Parties in light of the lack of funds available to prosecute such litigation, weighs in favor of approving the Settlement, particularly when considering the significant funds

9

that will be infused into the estate by Holdings as a beneficiary of the bar order. With such a benefit to be conferred on the debtor, it is fair and reasonable to ensure that the bargained for releases that led to the benefit actually result in finality for the settling parties. The Holdings Parties have consented to this Settlement, including the bar order, as has the Trustee on behalf of the estate, and there is no meaningful assertion that the Settlement or bar order violate the priority and distribution schemes under the Code. Accordingly, the application of these factors weigh in favor of approving the bar order.

The only meaningful challenge to the bar order is premised on Worldgate's assertion that the Settlement results in the nonconsensual release of its individual claims against the debtor, in violation of the Supreme Court's ruling in *Harrington v. Purdue Pharma, L.P.*, 144 S.Ct. 2071, 2078 (2024). At the hearing, in response to the Court's questioning, the Trustee and the Holdings Parties indicated that the purpose of this provision was only to ensure that claims released by the Trustee or the Holdings Parties were not going to be brought by other parties post-Settlement. While Worldgate seemed to believe that the language of the bar provision combined with the release provisions could result in a bar against Worldgate maintaining any individual claims it might have against the debtor, the Court disagrees.

First, the Settlement releases and the bar order bars the Trustee Claims, which only include estate causes of action. In addition to being clear from the Settlement itself, this fact was confirmed at the hearing on approval of the Settlement. "If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *Poth v. Russey*, 99 F. App'x 446, 457 (4th Cir. 2004) (quoting *Nat. Am. Ins. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439, 441 (4th Cir. 1999)); *see also Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*, 740 F.3d 875, 879 (3d Cir. 2013) ("After a company files for bankruptcy, 'creditors lack standing to assert claims that are 'property of the estate.'" (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002)).

Second, there is a simple solution to this issue that the Court will require as a condition to approval of the Settlement. Any order approving the Settlement must include a provision that substantially complies with the following language:

10

Notwithstanding anything to the contrary herein or in the Settlement Agreement, the Released Claims, shall in no event include any individual separate claim of Worldgate that does not constitute a cause of action that the Trustee has standing to bring in her capacity as the Trustee of the estate. For the avoidance of doubt, Released Claims will include causes of action that Worldgate may have had standing to bring under state law or applicable nonbankruptcy law prior to the bankruptcy filing but subsequently became estate causes of action upon the filing of the bankruptcy petition.

## CONCLUSION

Accordingly, the Court will approve the Settlement and bar order as the Court finds they are fair and equitable, and that they fall above the lowest point in the range of reasonableness. Counsel for the Trustee is hereby instructed to submit an Order consistent with this ruling.

Date: Dec 18 2024

/s/ Klinette H Kindred
Klinette H. Kindred
United States Bankruptcy Judge

Entered On Docket: Dec 19 2024

Mailed copies to:

ClubX, LLC
451 Hungerford Dr., Suite 700
Rockville, MD 20850-5121
*Debtor*

Electronic copies to:

Robert H. Chappell, III, Esquire
Jennifer J. West, Esquire
Christopher A. Hurley, Esquire
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Counsel for Jennifer J. West,
Chapter 7 Trustee

Bradford F. Englander, Esquire
WHITEFORD TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Co-Counsel to Sport & Health Holdings, LLC

C. Bryan Wilson, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Co-Counsel to Sport & Health Holdings, LLC

Stephen K. Gallagher, Esquire
Nicholas M. DePalma, Esquire
VENABLE LLP

11

8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
Counsel to Worldgate Centre Owner, LLC

Office of the U.S. Trustee