IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| In re: | ) Chapter 7 |
| CLUBX LLC, | ) Case No. 20-12470 (KHK) |
| Debtor. | ) |

**DECLARATION OF C. BRYAN WILSON IN SUPPORT OF
REQUEST FOR ATTORNEYS' FEES AND COSTS**

    1.    I am a partner in the law firm of Williams & Connolly LLP and counsel for Sport & Health Holdings, LLC, RT Sport & Health Holding, LLC, VM Club Properties, LLC, the Minkoff Family Investment Club LLC, Green Stamps LLC, Real Property Advisors, L.L.C., Thomas D. W. Fauquier, Russell C. Minkoff, and Barry Minkoff (collectively, "Holdings Parties"), in the above-captioned matter. I submit this declaration in support of the Holdings Parties' Request for Attorneys' Fees and Costs, as directed by the Court at the January 20, 2026 hearing.[1] I am over 18 years of age, have personal knowledge of the facts stated herein based upon my personal knowledge and/or the business records of Williams & Connolly, and if called to testify to those facts, I could and would competently do so.

    2.    I graduated *magna cum laude* and Phi Beta Kappa from Miami University in 2001, and *magna cum laude* and Order of the Coif from Duke University School of Law in 2004, where I served as an article editor of the *Duke Law Journal*. Following my law school graduation, I

---

[1] To the extent necessary or required, the Holdings Parties deem this submission a Motion pursuant to Federal Rule of Bankruptcy Procedure 7054. The Holdings Parties are continuing to confer with opposing counsel concerning one or more orders memorializing the Court's rulings at the January 20, 2026 hearing, but understand that Worldgate has seven days from the date of this submission to provide its objections, if any, to the Holdings Parties' request for attorneys' fees and costs.

1

served as a law clerk to The Honorable Edith H. Jones on the United States Court of Appeals for the Fifth Circuit and to The Honorable Lee H. Rosenthal on the United States District Court for the Southern District of Texas. Following those clerkships, I joined Williams & Connolly, where I have worked since 2006. Throughout that time period, I have worked on complex litigation matters, both in courts and before arbitral tribunals, around the country. I am licensed to practice law in the District of Columbia and the Commonwealth of Virginia and am also a member in good standing of the bars of several federal courts, including the United States District Courts for the Eastern and Western Districts of Virginia and the United States Court of Appeals for the Fourth Circuit. I have first-chair trial experience and have litigated on a number of matters involving disputes over complex commercial contracts and various business torts, including claims for civil conspiracy, breach of fiduciary duty, and fraud, including litigating such claims in the context of a bankruptcy. I was recognized as a "Litigation Star" by Benchmark Litigation in 2026. I have served as counsel in this litigation since its inception and oversaw the work of all of the Williams & Connolly timekeepers whose time and/or fees are at issue in this request, as well as the costs and expenses.

3.	Nicholas Loftus graduated from University of Virginia, with highest distinction, in 2014, and from University of Michigan Law School, *cum laude*, in 2020, where he served as a senior editor of the *Michigan Law Review*. After graduating law school, Mr. Loftus served as a law clerk to The Honorable Stephen H. Glickman on the District of Columbia Court of Appeals and to The Honorable Leonie M. Brinkema on the United States District Court for the Eastern District of Virginia. In 2022, Mr. Loftus joined Williams & Connolly, where he works on a variety of commercial litigation matters. Mr. Loftus is licensed to practice law in the District of Columbia and the Commonwealth of Virginia. Mr. Loftus worked directly on the settlement agreement with

2

the Trustee and the bar order at issue in the Holdings Parties' Motion To Enforce the Bar Order and Hold Worldgate Center Owner, LLC in Contempt (the "Motion To Enforce").

4.  William Morrison graduated from Brigham Young University, *cum laude*, in 2018, and from the J. Reuben Clark Law School at Brigham Young University, *magna cum laude* and Order of the Coif, in 2021, where he served as a lead note and comment editor of the *BYU Law Review*. After graduating law school, Mr. Morrison served as a law clerk to The Honorable Michael W. Mosman on the United States District Court for the District of Oregon and to The Honorable Jay S. Bybee on the United States Court of Appeals for the Ninth Circuit. In 2023, Mr. Morrison joined Williams & Connolly, where he works on a variety of commercial litigation matters. Mr. Morrison is licensed to practice law in the District of Columbia and the State of California.

5.  Williams & Connolly has been repeatedly recognized for its litigation capabilities. This includes being named (1) Law Firm of the Year (*The American Lawyer*, 2025); (2) Litigation Department of the Year, General Litigation (*The American Lawyer*, 2025); (3) a Top 20 Trial Law Firm (Benchmark Litigation, 2025); (4) Law Firm of the Year (*The National Law Journal*, 2025); and (5) Litigation Department of the Year – General Litigation (*The National Law Journal*, 2025). It is currently ranked by Chambers as a Band 1 (the highest level) law firm in Washington, D.C. for "Litigation: General Commercial."

6.  On July 24, 2025, Worldgate moved to resume a case against ClubX LLC in Fairfax County Circuit Court (the "Fairfax Action") that had been stayed pending bankruptcy. In its motion to resume the action, Worldgate moved to amend the case to add the Holdings Parties and assert claims for tortious interference with contract and business conspiracy. In the Fairfax Action, Worldgate sought from the Holdings Parties $28 million in alleged compensatory damages, treble

3

damages (which would total $84 million), punitive damages, and attorneys' fees. Worldgate did not inform the Holdings Parties that it had moved to amend its complaint to include claims against the Holding Parties. The Holdings Parties only learned of the motion to amend through third parties.

7. The Holdings Parties received formal notice that the Fairfax County Circuit Court had granted Worldgate's motion to reopen and amend the complaint in the Fairfax Action on August 7, 2025. That day, I emailed counsel for Worldgate on behalf of the Holdings Parties, informing Worldgate that its assertion of claims violated the Bar Order, and that the Holdings Parties would take "all steps necessary to enforce the Bar Order" unless Worldgate withdrew the claims with prejudice. A genuine copy of my email to Worldgate's counsel is attached hereto as **Exhibit 1**.

8. The next day, August 8, 2025, counsel for Worldgate responded to my email, declined to withdraw the claims in the Fairfax Action, and asked if I could accept service of process for the Holdings Parties in the Fairfax Action. A genuine copy of the email I received from Worldgate's counsel is attached hereto as **Exhibit 2**.

9. Thereafter, counsel for the Holdings Parties and Worldgate conferred about a proposed schedule for re-opening the bankruptcy case and litigating their dispute over the bar order and its impact on the Fairfax Action. Worldgate proposed that it file an opening and reply brief and that the Holdings Parties would have only one brief, responding to Worldgate's brief. The Holdings Parties reiterated that they would be moving to enforce the bar order and to hold Worldgate in contempt, and suggested that Worldgate respond to that. In particular, Mr. Loftus wrote to Worldgate's counsel on August 21, 2025, "The Holdings Parties intend to move to enforce the Bar Order and hold Worldgate in contempt. We would like to avoid dueling submissions if

4

possible, because we think it will result in six largely overlapping briefs, which the Court presumably would not want. But if Worldgate chooses to file a motion, the current draft is written to allow for that." A genuine copy of Mr. Loftus's email and attachments are attached hereto as **Exhibit 3**.

10. Worldgate rejected that proposal, and asked that the Holdings Parties file no motion at all until Worldgate's so-called "motion for aid and direction/clarification" be filed first, which Worldgate proposed would not be resolved until "Late November." Worldgate also wanted to require a hearing for the Court to set a briefing schedule. A genuine copy of Worldgate counsel's email dated August 22, 2025 is attached hereto as **Exhibit 4**.

11. The Holdings Parties cautioned Worldgate again about needlessly expanding the briefing. Ultimately, the parties agreed to simultaneous briefing of the issues, including briefing on what Worldgate ultimately described as a Motion For Clarification. Mr. Loftus wrote to Worldgate's counsel, "The most efficient path forward is to litigate one motion filed by the Holdings Parties that addresses both liability and remedies. A motion by Worldgate is unnecessary. If the Court denies the Holdings Parties' motion to enforce the Bar Order, then Worldgate necessarily receives the clarification it needs as to whether it can proceed in the Fairfax Action. In contrast, the Holdings Parties would not receive the relief they seek if Worldgate filed a motion for clarification and the Court denied it. We would therefore strongly suggest that Worldgate agree to litigate one motion filed by the Holdings Parties. If Worldgate insists on filing its own motion for clarification, then we propose that the parties file cross-motions on the same day[.]" A genuine copy of Mr. Loftus's email to Worldgate's counsel of August 25, 2025 is attached hereto as **Exhibit 5**.

12. Ultimately, Worldgate insisted on filing its own Motion For Clarification simultaneously with the Holdings Parties' Motion To Enforce.

13. The Holdings Parties currently seek $322,774.85 in fees and costs from Williams & Connolly. That request consists of $311,565.83 in attorneys' fees and $11,209.02 in costs.

14. The Holdings Parties are seeking fees incurred for only one partner and two associates from Williams & Connolly. The Holdings Parties are seeking fees incurred in this litigation for 40.3 hours of my time, 198.2 hours of Mr. Loftus's time, and 36 hours of Mr. Morrison's time. Williams & Connolly bills in tenth-of-an-hour increments. All of the fees and costs were entered contemporaneously by the identified timekeeper into the firm's time and billing and/or expense system and I reviewed all of the entries for reasonableness and accuracy before they were included on the Holdings Parties' invoices. Those invoices were reviewed again, including by me personally, before being included in this motion.

15. Based on my experience, all of the requested fees and costs included in the Holdings Parties' application are reasonable. The attorney's fees charged and sought in this motion relate solely to the Motion To Enforce and related briefing sought in Worldgate's mirror-image filing, the Motion For Clarification. The Holdings Parties are not seeking to recover any fees or expenses incurred for unrelated work that occurred during this time period.

16. The time billed in briefing the Motion To Enforce and the Motion For Clarification was reasonable. This matter has a long and complicated history; Worldgate's allegations against the Holdings Parties date back to 2014, and these motions followed a contentious Chapter 7 bankruptcy, including a lengthy settlement and mediation process and a contested settlement proceeding. Briefing the motions and preparing to argue them demanded a thorough understanding of this history, both to orient the Court and to unmask Worldgate's allegations as

6

fraudulent conveyance claims. It also required significant time spent on legal research, into both jurisdictional and substantive issues, conferring with Worldgate's counsel, re-opening the bankruptcy, conferring with the past Trustee concerning whether the Trustee would need to participate, and advising our clients about all of the foregoing. Moreover, Worldgate's briefing presented various novel legal theories based on out-of-circuit authorities, such as the Second Circuit's *Wagoner* rule. Although these arguments were without merit, responding to them required research into the law of a number of jurisdictions. Additional time was incurred in preparing for and arguing the motions, working on proposed orders memorializing the Court's decisions, and preparing this request for attorneys' fees and costs. Despite the complexity of the issues, the case was leanly staffed to avoid redundancies. The case team was limited to myself and two associates, with the bulk of the work performed by one of those associates, Mr. Loftus. Our co-counsel, Bradford Englander, also provided substantial insight and assistance into, among other things, this Court's rules and practices.

17. The time spent resolving this dispute was compounded by Worldgate's insistence on filing its own Motion for Clarification. This required the Holdings Parties to expend additional time and costs responding to arguments that Worldgate then recycled in part in its opposition to the Motion to Enforce.

18. In 2025, Williams & Connolly charged the Holdings Parties $1,445.00 per hour for my time, $1,079.50 per hour for Mr. Loftus's time, and $1,011.50 per hour for Mr. Morrison's time. These rates reflect a 15% discount from the firm's standard rates for existing clients in 2025. The Holdings Parties agreed to pay these rates, and have paid the invoices for all time and charges billed by Williams & Connolly that the Holdings Parties have received to date. The discounted

rates charged to the Holdings Parties in this action are generally lower than the rates customarily charged to other clients for whom I perform legal services at Williams & Connolly.

19. Rates for Williams & Connolly's attorneys increase every year on January 1. In 2026, Williams & Connolly charged the Holdings Parties $1,678.75 per hour for my time and $1,122 per hour for Mr. Morrison's time. These rates again reflect a 15% discount from the firm's standard rates for existing clients in 2026. The Holdings Parties agreed to pay these rates. This request includes some of the firm's charges for January 2026, which have not yet been invoiced to the Holdings Parties. Once those charges are invoiced to the Holdings Parties, I fully expect the Holdings Parties to pay them, as they have consistently and timely paid the firm's invoices for the many years this dispute has been going on.

20. I am familiar with the rates charged by large law firms in Northern Virginia, as well as other major markets in the United States. Based on my knowledge and experience, Williams & Connolly's rates at issue in this motion are at or below the prevailing market rate for comparable legal services provided by large, national law firms like Williams & Connolly, including firms litigating in Northern Virginia (where I and other attorneys at Williams & Connolly are currently, and have in the past, litigated a number of matters using either its own Virginia-barred attorneys and/or with Virginia-based co-counsel).

21. The Holdings Parties incurred and paid additional fees and costs for work performed by several other Williams & Connolly staff members, including a paralegal who helped assemble this fee request. The Holdings Parties also paid fees and costs to Whiteford Taylor & Preston, LLP, which the Holdings Parties retained as bankruptcy and local counsel. Out of an abundance of caution and in the exercise of billing discretion, the Holdings Parties are not seeking those additional fees and costs in this motion. The Holdings Parties incurred costs in the form of

legal research charges from Westlaw and Lexis. Williams & Connolly customarily passes through those charges at cost to clients like the Holdings Parties. As noted above, the Holdings Parties agreed to pay these charges, and have paid the invoices including such charges that they have received to date, in this matter.

22. Attached hereto as **Exhibit 6** is a genuine, partially redacted copy of an August 14, 2025 Williams & Connolly invoice for legal services rendered to the Holdings Parties in the prior month. Time entries that are redacted are done to withhold privileged information or because the entry is not related to the motion. The Holdings Parties do not seek to recover any attorneys' fees or costs in connection with any such time entry that is redacted. Personal identifying information, including bank account and wire transfer information, has also been redacted. This redacting practice applies to every invoice submitted in connection with the Holding Parties' request for attorneys' fees and costs.

23. Attached hereto as **Exhibit 7** is a genuine, partially redacted copy of a September 15, 2025 Williams & Connolly invoice for legal services rendered to the Holdings Parties in the prior month.

24. Attached hereto as **Exhibit 8** is a genuine, partially redacted copy of an October 23, 2025 Williams & Connolly invoice for legal services rendered to the Holdings Parties in the prior month.

25. Attached hereto as **Exhibit 9** is a genuine, partially redacted copy of a November 24, 2025 Williams & Connolly invoice for legal services rendered to the Holdings Parties in the prior month.

26. Attached hereto as **Exhibit 10** is a genuine, partially redacted copy of a December 11, 2025 Williams & Connolly invoice for legal services rendered to the Holdings Parties in the prior month.

27. Attached hereto as **Exhibit 11** is a genuine, partially redacted copy of a January 12, 2026 Williams & Connolly invoice for legal services rendered to the Holdings Parties in the prior month.

28. Attached hereto as **Exhibit 12** is a genuine, partially redacted copy of a January 30, 2026 Williams & Connolly invoice for legal services rendered to the Holdings Parties in the month of January 2026.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 30th day of January, 2026, at Washington, D.C.

*/s/ C. Bryan Wilson*
C. Bryan Wilson

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 30th day of January 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system which will send electronic notice of the filing to all counsel of record.

                                                 */s/ Bradford F. Englander*
                                                 Bradford F. Englander